EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
*v.* COMMERCIAL OFFICE PRODUCTS CO.

No. 86–1696.   Argued January 13, 1988—Decided May 16, 1988

MARSHALL, J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II–A, and III, in which BREN-

NAN, WHITE, BLACKMUN, and O'CONNOR, JJ., joined, and an opinion with respect to Parts II–B and II–C, in which BRENNAN, WHITE, and BLACKMUN, JJ., joined. O'CONNOR, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 125. STEVENS, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 126. KENNEDY, J., took no part in the consideration or decision of the case.

*Richard J. Lazarus* argued the cause for petitioner. With him on the briefs were *Solicitor General Fried, Deputy Solicitor General Ayer, Charles A. Shanor, Gwendolyn Young Reams, Vella M. Fink,* and *Donna J. Brusoski.*

*James L. Stone* argued the cause for respondent. With him on the brief was *Brent T. Johnson.**

JUSTICE MARSHALL announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II–A, and III, and an opinion with respect to Parts II–B and II–C, in which JUSTICE BRENNAN, JUSTICE WHITE, and JUSTICE BLACKMUN joined.

This case raises two questions regarding the time limits for filing charges of employment discrimination with the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U. S. C. § 2000e *et seq.* The primary question presented is whether a state agency's decision to waive its exclusive 60-day period for initial processing of a discrimination charge, pursuant to a worksharing agreement with the EEOC, "terminates" the

---

*A brief of *amici curiae* urging reversal was filed for the State of Colorado et al. by *Duane Woodard,* Attorney General of Colorado, *Charles B. Howe,* Deputy Attorney General, *Richard.H. Forman,* Solicitor General, *Mary Ann F. Whiteside,* First Assistant Attorney General, *Joseph I. Lieberman,* Attorney General of Connecticut, *Frederick D. Cooke, Jr.,* Acting Corporation Counsel of the District of Columbia, *William L. Webster,* Attorney General of Missouri, *W. Cary Edwards,* Attorney General of New Jersey, *Robert Abrams,* Attorney General of New York, *Jim Mattox,* Attorney General of Texas, *Donald J. Hanaway,* Attorney General of Wisconsin, and *Joseph B. Meyer,* Attorney General of Wyoming.

*Robert E. Williams, Douglas S. McDowell,* and *Jeffrey A. Norris* filed a brief for the Equal Employment Advisory Council as *amicus curiae.*

agency's proceedings within the meaning of § 706(c) of Title VII, 78 Stat. 260, as amended in 1972, 86 Stat. 104, 42 U. S. C. § 2000e–5(c), so that the EEOC immediately may deem the charge filed.   In addition, we must decide whether a complainant who files a discrimination charge that is untimely under state law is nonetheless entitled to the extended 300-day federal filing period of § 706(e) of Title VII, 78 Stat. 260, as amended in 1972, 86 Stat. 105, 42 U. S. C. § 2000e–5(e).

## I

The time limit provisions of Title VII as interpreted by this Court establish the following procedures for filing discrimination charges with the EEOC.   As a general rule, a complainant must file a discrimination charge with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice.   § 706(e), 42 U. S. C. § 2000e–5(e).[1]   If a complainant initially institutes proceedings with a state or local agency with authority to grant or seek relief from the practice charged, the time limit for filing with the EEOC is extended to 300 days.   *Ibid.*

In order to give States and localities an opportunity to combat discrimination free from premature federal inter-

---

[1] Section 706(e) provides:

"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."   86 Stat. 105, 42 U. S. C. § 2000e–5(e).

vention, the Act provides that no charge may be filed with the EEOC until 60 days have elapsed from initial filing of the charge with an authorized state or local agency, unless that agency's proceedings "have been earlier terminated." § 706(c), 42 U. S. C. § 2000e–5(c).[2] The EEOC's referral of a charge initially filed with the EEOC to the appropriate state or local agency properly institutes the agency's proceedings within the meaning of the Act, and the EEOC may hold the charge in "'suspended animation'" during the agency's 60-day period of exclusive jurisdiction. *Love* v. *Pullman Co.*, 404 U. S. 522, 525–526 (1972). In light of the 60-day deferral period, a complainant must file a charge with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory event in order to ensure that it may be filed with the EEOC within the 300-day limit. See *Mohasco Corp.* v. *Silver*, 447 U. S. 807, 814, n. 16 (1980). If the complainant does not file within 240 days, the charge still may be timely filed with the

---

[2] Section 706(c) provides:

"In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under [subsection (b)] of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority." 86 Stat. 104, 42 U. S. C. § 2000e–5(c).

EEOC if the state or local agency terminates its proceedings before 300 days.   See *ibid.*

· The central question in this case is whether a state agency's waiver of the 60-day deferral period, pursuant to a worksharing agreement with the EEOC, constitutes a "termination" of its proceedings so as to permit the EEOC to deem a charge filed and to begin to process it immediately.   This question is of substantial importance because the EEOC has used its statutory authority to enter into worksharing agreements with approximately three-quarters of the 109 state and local agencies authorized to enforce state and local employment discrimination laws.   See § 709(b), 86 Stat. 107–108, 42 U. S. C. § 2000e–8(b) (authorizing the EEOC to "enter into written agreements" with state and local agencies to promote "effective enforcement" of the Act); Brief for Petitioner 4 (EEOC has entered into worksharing agreements with approximately 81 of 109 authorized state and local agencies).

These worksharing agreements typically provide that the state or local agency will process certain categories of charges and that the EEOC will process others, with the state or local agency waiving the 60-day deferral period in the latter instance.   See, *e. g.*, Worksharing Agreement between Colorado Civil Rights Division and EEOC, App. to Pet. for Cert. 48a–49a.   In either instance, the nonprocessing party to the worksharing agreement generally reserves the right to review the initial processing party's resolution of the charge and to investigate the charge further after the initial processing party has completed its proceedings.   See, *e. g.*, *id.*, at 47a.   Whether a waiver of the 60-day deferral period pursuant to a worksharing agreement constitutes a "termination" of a state or local agency's proceedings will determine not only when the EEOC may initiate its proceedings, but also whether an entire class of charges may be timely filed with the EEOC in the first instance.

The facts of the instant case concretely reflect what is at stake.   On March 26, 1984, Suanne Leerssen filed a charge of

discrimination with petitioner EEOC. She alleged that 290 days earlier, respondent Commercial Office Products Company had discharged her because of her sex in violation of Title VII. On March 30, the EEOC sent a copy of Leerssen's charge and a charge transmittal form to the Colorado Civil Rights Division (CCRD), which is authorized by the State to process charges of employment discrimination. The form stated that the EEOC would initially process the charge, pursuant to the worksharing agreement between the EEOC and the CCRD.

The CCRD returned the transmittal form to the EEOC, indicating on the form that the CCRD waived its right under Title VII to initially process the charge. On April 4, the CCRD sent a form letter to Leerssen explaining that it had waived its right to initial processing but stating that it still retained jurisdiction to act on the charge after the conclusion of the EEOC's proceedings. If the CCRD's waiver "terminated" its proceedings, then Leerssen's charge was filed with the EEOC just under the 300-day limit. If the waiver was not a "termination," however, then the charge was not timely filed with the EEOC because the 60-day deferral period did not expire until well after the 300-day limit.

The timeliness issue was raised in this case when the EEOC issued an administrative subpoena for information relevant to Leerssen's charge. Respondent refused to comply with the subpoena, maintaining that the EEOC lacked jurisdiction to investigate the charge because it was not timely filed. The EEOC commenced an action in the United States District Court for the District of Colorado seeking judicial enforcement of the subpoena. The District Court agreed with respondent and dismissed the EEOC's enforcement action, holding that the EEOC lacked jurisdiction over Leerssen's charge because it was not timely filed. See Civil Action No. 85–K–1385 (June 6, 1985), App. to Pet. for Cert. 23a.

The Court of Appeals for the Tenth Circuit affirmed. 803 F. 2d 581 (1986). As a threshold matter, the Court of Ap-

peals rejected respondent's contention that the extended 300-day federal filing period was inapplicable because Leerssen had failed to file her charge with the CCRD within the State's own 180-day limitations period. *Id.*, at 585–586, and n. 3. The Court of Appeals agreed with the District Court, however, that Leerssen's charge was not filed within the 300-day period and that the EEOC therefore lacked jurisdiction over the charge. The Court of Appeals reasoned that a state agency "terminates" its proceedings within the meaning of § 706(c) only when it "completely surrenders its jurisdiction over a charge." *Id.*, at 587. Because the CCRD retained jurisdiction over Leerssen's charge, reserving the right to act at the conclusion of the EEOC's proceedings, it did not "finally and unequivocally terminate its authority" over the charge as the plain language of the statute required. *Id.*, at 590. The Court of Appeals expressly disagreed with the decision of the First Circuit in *Isaac* v. *Harvard University,* 769 F. 2d 817 (1985). The First Circuit had upheld the EEOC's view that a waiver of the right to initially process a charge constitutes a "termination," reasoning that the language of the Act is ambiguous and that the history and purposes of the Act support the EEOC's construction. Judge McKay dissented from the opinion of the Court of Appeals in this case, arguing that the EEOC should prevail for the reasons offered by the First Circuit.

We granted certiorari to resolve the conflict between the First and the Tenth Circuits, 482 U. S. 926 (1987), and we now reverse.

## II

### A

First and foremost, respondent defends the judgment of the Court of Appeals on the ground that the language of the statute unambiguously precludes the conclusion that the CCRD's waiver of the deferral period "terminated" its proceedings. According to respondent, "terminated" means only "'completed'" or "'ended.'" Brief for Respondent 14. Respond-

ent urges that this definition is met only when a state agency, in the words of the Court of Appeals, "completely relinquish[es] its authority to act on the charge at that point *or in the future.*" 803 F. 2d, at 589, n. 13 (emphasis in original). Because the CCRD retained authority to reactivate its proceedings after the EEOC's resolution of the charge, respondent maintains that the CCRD did not "terminate" its proceedings within the meaning of the Act.

We cannot agree with respondent and the Court of Appeals that "terminate" must mean "to end for all time." Rather, we find persuasive the determination of the First Circuit that the definition of "termination" also includes "cessation in time." The First Circuit noted that this definition is included in both Webster's Third New International Dictionary 2359 (1976) (definition of "terminate") and Black's Law Dictionary 1319 (5th ed. 1979) (definition of "termination"). See *Isaac,* 769 F. 2d, at 820, 821, n. 5. Moreover, the First Circuit correctly observed that common usage of the words "terminate," "complete," or "end" often includes a time element, as in "ending negotiations despite the likely inevitability of their resumption" or "terminating work on the job-site knowing that it will resume the next day." *Id.,* at 821. These observations support the EEOC's contention that a state agency "terminates" its proceedings when it declares that it will not proceed, if it does so at all, for a specified interval of time.

To be sure, "terminate" also may bear the meaning proposed by respondent. Indeed, it may bear that meaning more naturally or more frequently in common usage. But it is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need not be the best one by grammatical or any other standards. Rather, the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference. See *Oscar Mayer & Co.* v. *Evans,* 441 U. S. 750, 761 (1979). The reasonableness of the EEOC's interpretation of "termi-

nate" in its statutory context is more than amply supported by the legislative history of the deferral provisions of Title VII, the purposes of those provisions, and the language of other sections of the Act, as described in detail below. Deference is therefore appropriate.

## B

The legislative history of the deferral provisions of Title VII demonstrates that the EEOC's interpretation of § 706(c) is far more consistent with the purposes of the Act than respondent's contrary construction.

The deferral provisions of § 706 were enacted as part of a compromise forged during the course of one of the longest filibusters in the Senate's history. The bill that had passed the House provided for "deferral" to state and local enforcement efforts only in the sense that it directed the EEOC to enter into agreements with state agencies providing for the suspension of federal enforcement in certain circumstances. See H. R. 7152, 88th Cong., 2d Sess., § 708, 110 Cong. Rec. 2511–2512 (1964). The House bill further directed the EEOC to rescind any agreement with a state agency if the EEOC determined that the agency was no longer effectively exercising its power to combat discrimination. See *ibid.* In the Senate, this bill met with strenuous opposition on the ground that it placed the EEOC in the position of monitoring state enforcement efforts, granting States exclusive jurisdiction over local discrimination claims only upon the EEOC's determination that state efforts were effective. See, *e. g., id.,* at 6449 (remarks of Sen. Dirksen). The bill's opponents voiced their concerns against the backdrop of the federal-state civil rights conflicts of the early 1960's, which no doubt intensified their fear of "the steady and deeper intrusion of the Federal power." See *id.,* at 8193 (remarks of Sen. Dirksen). These concerns were resolved by the "Dirksen-Mansfield substitute," which proposed the 60-day deferral

period now in § 706(c) of the Act. See 110 Cong. Rec., at 11926–11935.

The proponents of the Dirksen-Mansfield substitute identified two goals of the deferral provisions, both of which fully support the EEOC's conclusion that States may, if they choose, waive the 60-day deferral period but retain jurisdiction over discrimination charges by entering into worksharing agreements with the EEOC. First, the proponents of the substitute deferral provisions explained that the 60-day deferral period was meant to give States a "reasonable opportunity to act under State law before the commencement of any Federal proceedings." *Id.*, at 12708 (remarks of Sen. Humphrey).[3] Nothing in the waiver provisions of the worksharing agreements impinges on the opportunity of the States to have an exclusive 60-day period for processing a discrimination charge. The waiver of that opportunity in specified instances is a voluntary choice made through individually negotiated agreements, not an imposition by the Federal Government. Indeed, eight worksharing States and the District of Columbia filed a brief as *amici* in this case, explaining their satisfaction with the operation of the waiver provisions of the worksharing agreements: "By clarifying pri-

---

[3] This point was made by other Senators and has been emphasized by this Court in our previous Title VII cases. See, *e. g.*, 110 Cong. Rec. 12688 (1964) (remarks of Sen. Saltonstall) (deferral provisions preserve "the opportunity and authority of the State and local governments to work out their own problems if they are willing to do so"); *id.*, at 14313 (remarks of Sen. Miller) (deferral provisions "giv[e] the States the opportunity to carry out their responsibilities first"); *Mohasco Corp.* v. *Silver*, 447 U. S. 807, 821 (1980) (deferral provisions "give state agencies an opportunity to redress the evil at which the federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated"); *Oscar Mayer & Co.* v. *Evans*, 441 U. S. 750, 755 (1979) (deferral provisions "give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of the discrimination"); *Love* v. *Pullman Co.*, 404 U. S. 522, 526 (1972) (deferral provisions "give state agencies a prior opportunity to consider discrimination complaints").

mary responsibility for different categories of charges, work-sharing agreements benefit both the EEOC and the states." Brief for Colorado et al. as *Amici Curiae* 5. Moreover, most worksharing agreements are flexible, permitting States to express interest in cases ordinarily waived under the agreement and to call upon the EEOC to refrain from assuming jurisdiction in such cases. See, *e. g.*, Worksharing Agreement Between CCRD and EEOC, App. to Pet. for Cert. 49a.

In contrast, respondent's argument that States should not be permitted to waive the deferral period because its creation reflected a congressional preference for state as opposed to federal enforcement is entirely at odds with the voluntarism stressed by the proponents of deferral. Congress clearly foresaw the possibility that States might decline to take advantage of the opportunity for enforcement afforded them by the deferral provisions. It therefore gave the EEOC the authority and responsibility to act when a State is "unable or unwilling" to provide relief. 110 Cong. Rec. 12725 (1964) (remarks of Sen. Humphrey). This Court, too, has recognized that Congress envisioned federal intervention when "States decline, for whatever reason, to take advantage of [their] opportunities" to settle grievances in "a voluntary and localized manner." *Oscar Mayer & Co.* v. *Evans*, 441 U. S., at 761. As counsel for the EEOC explained, deferral was meant to work as "a carrot, but not a stick," affording States an opportunity to act, but not penalizing their failure to do so other than by authorizing federal intervention. See Tr. of Oral Arg. 11. The waiver provisions of worksharing agreements are fully consistent with this goal.

In addition to providing States with an opportunity to forestall federal intervention, the deferral provisions were meant to promote "time economy and the expeditious handling of cases." 110 Cong. Rec. 9790 (1964) (remarks of Sen. Dirksen).[4] Respondent's proposed interpretation of § 706(c),

---

[4] Respondent's contrary contention that the compromise provisions represented Congress' choice of deferral over efficiency, see Brief for Re-

adopted by the Court of Appeals, is irreconcilable with this purpose because it would result in extraordinary inefficiency without furthering any other goal of the Act. The EEOC would be required to wait 60 days before processing its share of discrimination claims under a worksharing agreement, even though both the EEOC and the relevant state or local agency agree that the State or locality will take no action during that period. Or, in an effort to avoid this pointless 60-day delay, state and local agencies could abandon their work-sharing agreements with the EEOC and attempt to initially process all charges during the 60-day deferral period, a solution suggested by respondent. See Brief for Respondent 29–30. Such a solution would create an enormous backlog of discrimination charges in States and localities, preventing them from securing for their citizens the quick attention to discrimination claims afforded under worksharing agreements. Or, in another scenario proposed by respondent, see *id.*, at 29, n. 29, state or local agencies could rewrite their worksharing agreements with the EEOC to provide for "termination" of state or local proceedings in accordance with respondent's definition of that term—complete relinquishment of jurisdiction. This solution would prevent a pointless 60-day delay, but it would also preclude a State's reactivation of a discrimination charge upon the conclusion of federal proceedings.[5] Requiring that States completely

---

spondent 24, finds no support in the comments of Senator Dirksen, the chief architect of the compromise. His remarks make clear that he believed the compromise would promote efficiency while respecting state prerogatives. See, *e. g.*, 110 Cong. Rec. 8193 (1964) (deferral provisions will "assure individual complainants that they will have fair and expeditious consideration of their grievances").

[5] Reactivation of state proceedings after the conclusion of federal proceedings serves the useful function of permitting States to enforce their discrimination laws when these laws are more protective than Title VII. For example, Title VII does not give the EEOC jurisdiction to enforce the Act against employers of fewer than 15 employees or against bona fide private membership clubs. § 701(b), 42 U. S. C. § 2000e(b). Each year, the

relinquish authority over claims in order to avoid needless delay turns on its head the dual purposes of the deferral provisions: deference to the States and efficient processing of claims. As the *amici* States observe, such a requirement "frustrates the congressional intent to ensure state and local agencies the opportunity to employ their expertise to resolve discrimination complaints." Brief for Colorado et al. as *Amici Curiae* 1.

The most dramatic result of respondent's reading of the deferral provisions is the preclusion of any federal relief for an entire class of discrimination claims. All claims filed with the EEOC in worksharing States more than 240 but less than 300 days after the alleged discriminatory event, like Leerssen's claim in this case, will be rendered untimely because the 60-day deferral period will not expire within the 300-day filing limit.[6] Respondent's interpretation thus requires the 60-day deferral period—which was passed on behalf of state and local agencies—to render untimely a claim filed within the federal 300-day limit, despite the joint efforts of the EEOC and the state or local agency to avoid that result. As petitioner epigrammatically observes, a claim like Leerssen's that is filed with the EEOC within the last 60 days of the federal filing period is "too early until it is too late." Brief for Petitioner 25. This severe consequence, in conjunction with the pointless delay described above, demonstrates that respondent's interpretation of the language of § 706(c) leads to "absurd or futile results . . . 'plainly at variance with the policy of the legislation as a whole,'" which this Court need not and should not countenance. *United States* v. *American*

_____

CCRD reactivates four to five charges in which the EEOC has determined after investigation that it lacks jurisdiction. Brief for Colorado et al. as *Amici Curiae* 7.

[6] All of the worksharing States, with the possible exception of Oklahoma and Tennessee, retain jurisdiction over a charge when they waive the 60-day deferral period. Brief for Petitioner 27, n. 24. Hence, none of these States "terminates" its proceedings by its waiver under respondent's interpretation of that term.

*Trucking Assns., Inc.*, 310 U. S. 534, 543 (1940), quoting *Ozawa* v. *United States*, 260 U. S. 178, 194 (1922).

C

The EEOC's construction of § 706(c) also finds support in other, related sections of Title VII. These sections reinforce our reading of the legislative history that the 1964 Congress did not intend to preclude the operation of the waiver provisions of the worksharing agreements now widely in force.

Section 706(d) provides that when a member of the EEOC, rather than an individual complainant, files a discrimination charge in a State or locality with concurrent jurisdiction, "the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days . . . *unless a shorter period is requested,* to act." 42 U. S. C. § 2000e–5(d) (emphasis added). This language clearly permits state and local agencies to waive the 60-day deferral period and thus authorize the EEOC to take immediate action in cases arising under § 706(d). There is every reason to believe that Congress intended the same result in § 706(c), notwithstanding the variance in language. The legislative history of the deferral provisions reflects the legislators' understanding that the time limits of §§ 706(c) and (d) were the same. See, *e. g.,* 110 Cong. Rec. 12690 (1964) (remarks of Sen. Saltonstall); *id.,* at 15896 (remarks of Rep. Celler). Moreover, this Court already has recognized in *Love* v. *Pullman Co.,* 404 U. S., at 526–527, n. 6, that "the difference in wording between [the two sections] seems to be only a reflection of the different persons who initiate the charge." We concluded in *Love* that "[t]here is no reason to think" that Congress meant to permit the EEOC to hold a claim in abeyance during the deferral period under § 706(d), but not under § 706(c)—even though the former section expressly authorizes such action, and the latter section does not. *Ibid.* Similarly, in the instant case, there is no reason

to think that Congress meant to make the deferral period waivable by States under § 706(d) when the EEOC files a claim, but mandatory under § 706(c) when an individual files a claim.

The EEOC's interpretation of § 706(c) also finds support in provisions of the Act calling for formal cooperation between the EEOC and state and local agencies. Section 705(g)(1) gives the EEOC the power "to cooperate with and, with their consent, utilize regional, State, local, and other agencies." 78 Stat. 258, 42 U. S. C. § 2000e–4(g)(1). Section 709(b) specifies that "[i]n furtherance of such cooperative efforts, the Commission may enter into written agreements with such State or local agencies." 86 Stat. 108, 42 U. S. C. § 2000e–8(b). These sections clearly envision the establishment of some sort of worksharing agreements between the EEOC and state and local agencies, and they in no way preclude provisions designed to avoid unnecessary duplication of effort or waste of time. Because the EEOC's interpretation of the "termination" requirement of § 706(c) is necessary to give effect to such provisions in most of the existing worksharing agreements, we find that interpretation more consistent with the cooperative focus of the Act than respondent's contrary construction.

## III

In the alternative, respondent argues in support of the result below that the extended 300-day federal filing period is inapplicable to this case because the complainant failed to file her discrimination charge with the CCRD within Colorado's 180-day limitations period. Respondent reasons that the extended 300-day filing period applies only when "the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief" from the practice charged, § 706(e), 42 U. S. C. § 2000e–5(e), and that in the absence of a timely filing under state law, a state agency lacks the requisite "authority to grant or seek

relief." The Tenth Circuit rejected this argument below, as has every other Circuit to consider the question,[7] on the ground that the words "authority to grant or seek relief" refer merely to enabling legislation that establishes state or local agencies, not to state limitations requirements. We join the Circuits in concluding that state time limits for filing discrimination claims do not determine the applicable federal time limit.

Although respondent is correct that this Court's opinion in *Oscar Mayer & Co.* v. *Evans*, 441 U. S. 750 (1979), did not decide the precise issue we address today, see Brief for Respondent 36, the reasoning of *Oscar Mayer* provides significant guidance. In *Oscar Mayer*, we found in the Age Discrimination in Employment Act of 1967 (ADEA) context that a complainant's failure to file a claim within a state limitations period did not automatically render his federal claim untimely. We reasoned that the federal statute contained no express requirement of timely state filing, 441 U. S., at 759, and we declined to create such a requirement in light of the remedial purpose of the ADEA and our recognition that it is a "'statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.'" *Id.*, at 761, quoting *Love* v. *Pullman Co.*, *supra*, at 527. In the instant case, we decide the separate question whether under Title VII, untimely filing under state law automatically precludes the application of the extended 300-day federal filing period, but the reasoning of *Oscar Mayer* is entirely apposite. As we noted in *Oscar Mayer* itself, the filing provisions of the ADEA and Title VII are "virtually *in haec verba*," the for-

---

[7] See *Gilardi* v. *Schroeder*, 833 F. 2d 1226, 1230–1231 (CA7 1987); *Mennor* v. *Fort Hood National Bank*, 829 F. 2d 553, 556 (CA5 1987); *Maurya* v. *Peabody Coal Co.*, 823 F. 2d 933, 935 (CA6 1987), cert. denied, 484 U. S. 1067 (1988); *EEOC* v. *Shamrock Optical Co.*, 788 F. 2d 491, 493–494 (CA8 1986); *Thomas* v. *Florida Power & Light Co.*, 764 F. 2d 768, 771 (CA11 1985); *Howze* v. *Jones & Laughlin Steel Corp.* 750 F. 2d 1208, 1211 (CA3 1984).

mer having been patterned after the latter. 441 U. S., at 755. Title VII, like the ADEA, contains no express reference to timeliness under state law. In addition, the policy considerations that militate against importing such a hurdle into the federal ADEA scheme are identical in the Title VII context: Title VII also is a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.

The importation of state limitations periods into § 706(e) not only would confuse lay complainants, but also would embroil the EEOC in complicated issues of state law. In order for the EEOC to determine the timeliness of a charge filed with it between 180 and 300 days, it first would have to determine whether the charge had been timely filed under state law, because the answer to the latter question would establish which of the two federal limitations periods should apply. This state-law determination is not a simple matter. The EEOC first would have to determine whether a state limitations period was jurisdictional or nonjurisdictional. And if the limitations period was nonjurisdictional, like Colorado's in this case, the EEOC would have to decide whether it was waived or equitably tolled. The EEOC has neither the time nor the expertise to make such determinations under the varying laws of the many deferral States and has accordingly construed the extended 300-day period to be available regardless of the state filing. See 52 Fed. Reg. 10224 (1987). In contrast to the difficulties presented by respondent's argument, our broadly worded statement in *Mohasco Corp.* v. *Silver,* 447 U. S. 807 (1980), a case presenting a related issue regarding the application of the extended 300-day federal filing period, that a complainant "need only file his charge within 240 days of the alleged discriminatory employment practice in order to ensure that his federal rights will be preserved," *id.,* at 814, n. 16, establishes a rule that is both easily understood by complainants and easily administered by the EEOC. We reaffirm that rule today.

Because we find that the extended 300-day federal limitations period is applicable to this case and that the CCRD's waiver of the 60-day deferral period "terminated" its proceedings within that 300-day limit, we conclude that Leerssen's claim was timely filed under Title VII. We therefore reverse the decision of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE O'CONNOR concurring in part and concurring in the judgment.

I join Parts I and III of the Court's opinion. I also join Part II–A, in which the Court correctly concludes that in light of the statute's language, structure, and legislative history, sufficient ambiguity exists to warrant deference to the agency's construction of the word "terminated" in § 706(c). Indeed, deference is particularly appropriate on this type of technical issue of agency procedure. But while I agree with much of what the majority says in Parts II–B and II–C in indicating that the agency's construction is reasonable, in my view the majority goes too far by suggesting that the agency's position is the only one permissible. For example, the majority labels the respondent's position "absurd," *ante*, at 120, which of course implies that we would refuse to countenance an agency decision to adopt such an approach. See, *e. g., NLRB* v. *Food and Commercial Workers*, 484 U. S. 112, 123 (1987) (agency given deference only "as long as its interpretation is rational and consistent with the statute"); *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 844 (1984) (agency regulations given deference "unless they are arbitrary, capricious, or manifestly contrary to the statute"). Any such implication is incorrect. As the dissent concisely points out, *post* at 126,

and n. 1, the agency could quite reasonably conclude that the statutory language warrants giving the word "terminated" what the Court recognizes is its more natural reading, *ante*, at 115.

In short, I believe the result in this case is correct solely due to the traditional deference accorded the EEOC in interpretation of this statute. Because Parts II–B and II–C could be read to go beyond this view, I join only Parts I, II–A, and III of the Court's opinion and in the judgment.

JUSTICE STEVENS, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

In my opinion the Court's decision is not faithful to the plain language of the statute,[1] to the legislative compromise

---

[1] In a deferral State, § 706(c) of Title VII, 86 Stat. 104, 42 U. S. C. § 2000e–5(c), provides that "no charge may be filed . . . before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier *terminated*." (Emphasis added.) The Court reasons that as used in § 706(c) "termination" might mean a temporary "cessation in time" and thus is sufficiently ambiguous to require deference to the EEOC's interpretation. *Ante*, at 115–116. I doubt that Congress chose the word "terminated" to convey something other than absolute finality, which the majority recognizes is the meaning the word bears "more naturally or more frequently in common usage." *Ante*, at 115. The context in which the word "terminate" is used may inform the reader that the termination being referred to is an ending at or for a particular time. This is true of the examples given by the majority. See *ibid*. In the phrase "terminating work on the job-site knowing that it will resume the next day," it is the words used after the word "terminating" that convey the promise of future events, not the word "terminating" itself. The context in which "terminate" is used in § 706(c), however, negates the possibility that future activity by the State was contemplated, because Congress provided that state proceedings must have been *earlier* terminated.

The majority seeks to construe the statute in a manner that preserves an opportunity for a State to reactivate its proceedings upon the conclusion of federal proceedings. Although such an advantage may be prudent, it is not conferred by the statute, and the failure to afford it does not "tur[n] on its head" the purposes of the statute. See *ante*, at 120. That the statute operates to prevent concurrent jurisdiction over claims filed over 240 days

that made it possible to enact the Civil Rights Act of 1964,[2] or to our prior interpretation of the very provision the Court construes today.[3]  Accordingly, I respectfully dissent.

---

after the prohibited practice occurred does not frustrate congressional intent to protect state enforcement efforts.  What is being denied is not state, but federal intervention.

[2] See *Mohasco Corp.* v. *Silver*, 447 U. S. 807, 819–822 (1980).  Although it is perfectly clear that nothing in the legislative history contains any suggestion that complainants in deferral States were to be allowed to proceed with less diligence than those in nondeferral States (who must file within 180 days), the Court assumes that the entire class of claims filed after 240 days is entitled to specially favored treatment.  See *ante*, at 120–121; *Moore* v. *Sunbeam Corp.*, 459 F. 2d 811, 822–826, 829–830 (CA7 1972).

[3] In *Mohasco, supra*, at 821, we stated:

"Congress chose to prohibit the filing of any federal charge until after state proceedings had been completed or until 60 days had passed, whichever came sooner."