PER CURIAM:
Upon sua sponte reconsideration of this appeal, we vacate our prior opinion, published at 233 F.3d 1344 (11th Cir.2000), and substitute the following in its place:
Donald C. Maynard appeals the district court’s grant of judgment as a matter of law to Pneumatic Products Corporation (“Pneumatic”). The grant was predicated upon the finding that Maynard failed to prove that he timely filed a charge of discrimination with the Equal Employment Opportunity Commission (“EEOC”). Because we find that the district court was correct in concluding that the discrimination charge was not timely filed, we affirm the district court’s grant of judgment to Pneumatic.
I. BACKGROUND
Pneumatic Products Corporation (“Pneumatic”) hired Donald Maynard in 1991 as an assembly line worker on Pneumatic’s filter product line.[1] In 1994, Maynard sustained an on-the-job back injury in which he herniated a disc in his back, and by March of 1996, as a result of the herniated disc, Maynard could not lift more than fourteen pounds, sleep sufficiently (due to severe back pain), sit in a chair for more than fifteen to twenty minutes at a time, stand for more than ten to fifteen minutes at a time, bend at the waist, run up steps, or walk more than forty to fifty yards at a time. Pneumatic knew about Maynard’s back condition, and the limitations caused by his condition.
Pneumatic terminated Maynard’s employment on March 22, 1996. Pneumatic purported to fire Maynard because it was discontinuing the product line on which Maynard worked, but Maynard contended that Pneumatic actually fired him “because of [his] back.” Maynard submitted an affidavit to the EEOC 292 days after his termination, claiming that Pneumatic violated the Americans with Disabilities Act (“ADA”), 42 U.S.C. § 12101 et seq., by firing him because of a disability (his back condition).[2] In response, the EEOC sent Maynard a letter on January 15, 1997 advising him that he needed to complete the *1262 enclosed Form 5 documentation and should return it within five days. (Court Exh. 2). After receiving his right to sue letter, Maynard sued Pneumatic for violations of the ADA and the Florida Civil Rights Act, Fla. Stat. ch. 760.01 et seq. (1997). Prior to trial, Pneumatic at various times' raised motions to dismiss and for summary judgment, all were denied.[3]
Maynard’s claim proceeded to a jury trial, arid the district court granted Pneumatic’s motion for a directed verdict following the presentation of plaintiffs case. The district court relied on the fact that Maynard’s EEOC charge was not timely filed, hence his claims were time barred. Alternatively, the court stated that Maynard failed to establish that he had a disability within the meaning of the ADA. Maynard appeals both rulings.
II. DISCUSSION
We review de novo the district court’s grant of judgment as a matter of law, and view all evidence in the light most favorable to Maynard, the non-movant. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir.1998).
Assuming without deciding, as the district court initially did, that Maynard made out a prima facie case of disability, we only address an issue we declined to reach in our original opinion— whether Maynard timely filed his charge with the EEOC. Timely filing a charge of discrimination is a prerequisite to bringing suit under both Title VII and the ADA. See Section 706(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e) (1994); 42 U.S.C. § 12117(a); Love v. Pullman Co., 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) (“A person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964 ... may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief.”); Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir.1999) (“It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964.”). An ADA plaintiff has the burden of proving all conditions precedent to filing suit, including the condition that he timely filed with the EEOC. See Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1011 (11th Cir.1982) (“[T]he timely firing of an EEOC complaint is a condition precedent to a Title VII action”).
Ordinarily, an ADA plaintiff must file a charge complaining about an allegedly unlawful employment practice (the “charge”) with the EEOC within 180 days of the employment practice, see 42 U.S.C. § 2000e-5(e)(l) (1994), but the period for firing a charge with the EEOC may be extended to 300 days if the complainant first files a timely charge in a state or local agency in a “deferral state.” Id. Deferral *1263 states are those that prohibit the unlawful employment practice at issue and have established state or local authorities to grant or seek relief for such practice. See Section 706(c) of Title VII, 42 U.S.C. § 2000e-5(c); 42 U.S.C. § 2000e-(e)(l). In. deferral states, “no charge may be filed [with the EEOC]... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated....” 42 U.S.C. § 2000e-5(c). This gives the deferral state agencies notice of the alleged discrimination and an opportunity to investigate the allegations before the federal agency gets involved. See EEOC v. Commercial Office Prod. Co., 486 U.S. 107, 110, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) (The sixty-day deferral period was included in § 706(c) “to give States and localities an opportunity to combat discrimination free from premature federal intervention ... ”). Thus, in deferral states, either a complainant must file with the state agency by the 240th day after the discriminatory act, or the state agency must terminate proceedings by the 300th day on a charge filed after the 240th day. See Mohasco Corp. v. Silver, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).
Deferral states may also enter into worksharing agreements with the EEOC, whereby the deferral states waive the right to investigate a charge during the sixty-day deferral period. See 42 U.S.C. § 2000e-5(e)(l); 42 U.S.C. § 2000e-8(b). The deferral state’s waiver of the opportunity to investigate during the sixty-day deferral period may constitute a termination of the state’s proceedings, see Commercial Office Prod., 486 U.S. at 125, 108 S.Ct. 1666, thereby making a charge filed after the 240th day timely by virtue of the deferral state’s termination of its proceedings before the 300th day.
Maynard filed his charge of discrimination in Florida, a deferral state, but he never filed a charge with Florida’s state agency, the Florida Commission on Human Relations (“FCHR”); he instead alleges that he filed his charge directly with the EEOC, 292 days after Pneumatic terminated him. Maynard’s awkward filing left him with two important hurdles to jump before he could be deemed to have timely filed his EEOC charge; first, to be entitled to the 300-day filing period, as opposed to the usual 180-day period (which, importantly, he missed), Maynard needed to prove that he filed his charge with the FCHR before the 300th day following his termination. Second, since he filed more than 240 days after his termination, he needed to prove that the FCHR terminated its proceedings on his filing before the 300th day following his termination. To determine whether Maynard’s EEOC filing constituted a filing with the FCHR, and whether the FCHR terminated its proceedings before the 300th day, we would, ordinarily, look to the EEOCFCHR worksharing agreement.
The agreement’s language would determine whether Maynard’s filing with the EEOC constituted a simultaneous filing with the FCHR. See, e.g., Puryear v. County of Roanoke, 214 F.3d 514, 519 (4th Cir.2000) (quotation marks omitted) (citing Bolinsky v. Carter Mach. Co., 69 F.Supp.2d 842, 845-46 (W.D.Va.1999)) (“The [worksharing agreement] establishes streamlined procedures between the' two agencies for managing claims. Significantly, it designates each agency as the other’s agent for purpose of receiving and drafting charges of discrimination. Under the terms of the [worksharing agreement], a claim received by one agency is deemed received by the other, initiating each agency’s proceedings for purposes of Title VII, section 706(c). The [worksharing agreement] further provides that each agency *1264 will process the Title VII and ADEA charges it originally receives.... Thus, under the express terms of the [workshar-ing agreement], a plaintiff, by filing charges with the EEOC, thereby commences proceedings with both the [state agency] and the EEOC.”); Bolinsky, 69 F.Supp.2d at 847 (“[B]ecause the plaintiffs filing with the EEOC automatically commenced and terminated the state proceedings on his charge, his fifing with the EEOC was a sufficient exhaustion of his state law remedies.”).
The agreement’s language also would determine whether the FCHR constructively terminated Maynard’s fifing. See, e.g., Griffin v. Air Prod. & Chems., Inc., 883 F.2d 940, 943 (11th Cir.1989) (examining an earlier version of the EEOC-FCHR worksharing agreement, and determining that “the EEOC-FCHR worksharing agreement created an instantaneous ‘constructive termination’ ” of the FCHR proceedings); Puryear, 214 F.3d at 518 n. 4 (finding that the state agency constructively terminated a charge that was filed with the EEOC where “the EEOC forwards the charge to the [Virginia Council on Human Rights] in any event, pursuant to the [worksharing agreement].”); Griffin v. City of Dallas, 26 F.3d 610, 613 (5th Cir. 1994) (reviewing the Texas Commission on Human Rights-EEOC worksharing agreement, and determining that pursuant to that agreement “the state proceedings were instantaneously terminated upon [the complainant’s] fifing of his charge with the EEOC.”). Since the outcome of our query hinges on the language in the EEOC-FCHR agreement, we begin our analysis by scrutinizing the agreement for fiscal year 1997, the governing agreement when charges were filed.
Unfortunately, neither party to this appeal made the crucial EEOC-FCHR worksharing agreement a part of the record. Maynard, could only demonstrate timely filing if he showed that the EEOC-FCHR worksharing agreement provides that the EEOC is the FCHR’s agent for purposes of receiving complaints, and that the FCHR constructively terminates its proceedings when the EEOC receives a charge filed during the deferral period. As stated earlier, an ADA plaintiff bears the burden of proving that he timely filed his charge with the EEOC; Maynard did not sustain this burden of proof, as he failed to enter the necessary EEOC-FCHR worksharing agreement into the record. Therefore, the district court appropriately granted judgment as a matter of law in Pneumatic’s favor.
III. CONCLUSION
Our prior opinion is vacated in its entirety and we limit our holding in this case to deciding that Donald Maynard failed to prove that he timely filed his EEOC charge. Accordingly, we affirm the district court’s grant of judgment as a matter of law to Pneumatic Products Corporation. Because we conclude that the lack of timely fifing is a sufficient basis upon which to affirm the district court’s decision, we need not address any alternative basis for the grant.
AFFIRMED. .

. Maynard went on to work for Pneumatic in several capacities, but for sake of brevity and clarity we summarize his positions as "assembly line worker.”

. The evidence of the claim being initiated 292 days after his termination on January 8, 1997 takes two forms. In opposition to ap-pellee's motion for summary judgment, Maynard attached his affidavit as proof that his claim was timely filed, (Tab 14), and in the EEOC’s notice to the Florida Commission on Human Relations that the EEOC is investigating the matter pursuant to the worksharing agreement between the two, they acknowledge the date of receipt of the charge as January 8, 1997. See EEOC Form 212, March 10, 1997 (Tab 10, Exh. D).

. It should be noted that Pneumatic continuously contested the timeliness of Maynard’s filing. Maynard asserted in his initial complaint that he had filed a claim with the FCHR on November 26, 1996. See Complaint and Demand for Jury Trial, January 26, 1998, ¶ 11 (Tab 1). Pneumatic's answer concluded that they were "without knowledge and therefore denied” Maynard's assertion on this point. See Defendant's Answer and Affirmative Defenses, March 10, 1998, at 2 (Tab 5). Pneumatic further asserted as its third affirmative defense that Maynard failed to meet a condition precedent for filing an ADA based action. Id. at 3. Based in part on the timeliness issue, Pneumatic filed a motion for summary judgment, which was denied by the court. See Defendant's Motion for Summary Judgment, October 13, 1998, ¶ 6, at 2-3 (Tab 10). After quite a bit of back and forth between the parties to the case and some initial confusion about the documentation and dates, the district court denied the motion.