PICKERING, Circuit Judge,
concurring in part and dissenting in part:
I concur with the majority opinion that we have no jurisdiction of Knight’s cross petition. I also agree with the majority that GERA provides protection against retaliation and that the attempt of the defendant Christian to have the appellant Knight’s husband fired was properly before the EEOC. I do not agree, however, that the EEOC decision finding retaliation should be reversed. As to that part of the majority opinion, I respectfully dissent.
In order to make an appropriate decision as to the claim of retaliation, it is necessary to understand the factual background of this case. Knight testified that during the course of her employment, Christian consistently made sexual jokes, remarks and innuendos that she found offensive. She identified some eight instances of inappropriate conversation and three instances of inappropriate touching. She claimed that she was subjected to a sexually hostile work environment.
Knight complained of Christian relating that when he was a prison warden “men at the prison” would smell his former secretary’s bicycle seat after she finished riding around the prison compound. Christian *694 admitted telling of the incident but claimed his intent was to let his staff know he would not tolerate sexual harassment. Knight also complained that Christian had made a remark about another clerk having large breasts and that Knight was not even “in the running.” Christian denied this conversation. Knight complained of Christian repeating stories of homosexual rape and sodomy while he was a prison •warden. Knight complained of Christian jokingly offering to have sex with the female employees in order to help them lose weight. Christian admitted that he told the clerks that he had read an article that stated that you could lose weight by having sex, but denied he' had offered to have sex with the female employees. Knight also complained of Christian jokingly offering to sexually molest his clerks so that they could obtain a sexual harassment settlement from the county and split the proceeds. Christian admitted jokingly making a proposal to that effect.
The EEOC found that
In July 1996, after [Christian] recounted the details of a death scene,where the decedent had died while masturbating, [Knight] asked him not to again repeat the story because it was so sexually offensive. Shortly thereafter, [Knight] also complained to a county commissioner regarding [Christian’s] claimed sexual harassment. After her complaints, [Knight] contended that [Christian] began a campaign of retaliation against her as evidenced by his shunning her; ... additionally appellant claimed that all retaliatory actions, taken together, made working conditions impossible, forcing her to resign from her job on November 6,1996. Appellant contended that after her resignation, the retaliation continued when [Christian] attempted to have - her husband, a county worker, falsely arrested.
Although the EEOC found that Christian’s ¿simulation of masturbation was “distasteful, unprofessional, and in poor judgment”,
the ALJ found that while [Christian’s] stories, comments and jokes were offensive to Appellant, this conduct, even viewed cumulatively, in the context of the totality of the circumstances, was not sufficiently severe and persuasive to rise to the level of sexual harassment.
The,EEOC affirmed this finding. .Knight also, argued that the Administrative Law Judge (ALJ) failed to take into consideration that Christian “requested pay raises for all of his staff [who testified in his favor] prior to the hearing, and that he handed out $100 bills at the hearing to buy lunch for the witnesses, ...”
The EEOC reversed the ALJ as to the retaliation claim based on ostracism and attempting to get Knight’s spouse fired. The EEOC found “our review of the record indicates that most of Appellant’s claimed mental and physical problems developed after she reported the sexual harassment, when [Christian] allegedly engaged in retaliation against her.” The •EEOC further found
that immediately after [Knight] complained about sexual harassment in July 1996, [Christian] began to shun and isolate her, enlisting the aid of co-workers to do so, and then tried to secretly tape record her. In fact, contrary to the ALJ’s finding, we find [Christian’s] frequent remarks to Appellant that she was untrustworthy and disloyal suggesting that her work depended on her keeping quiet about the sexual harassment claim, is probative evidence of his animus. Furthermore, we find that the respondent has failed to proffer a legitimate non-discriminatory reason for the conduct at issue....
*695 (citation omitted). “The EEOC found that Christian’s ostracism of Appellant, which occurred on a continuous basis from July 1996 until her resignation in November 1996, was motivated by retaliatory animus and constitutes an impermissible act of reprisal.”
The EEOC noted that “[t]he ALJ found the attempted arrest of Appellant’s spouse ... to be the most problematic aspect of Appellant’s reprisal claim. The ALJ found that the attempted arrest occurred after Appellant filed a complaint with the EEOC against [Christian] ... and that [Christian] then attempted to have Appellant’s spouse arrested by falsely accusing him of stealing a sledgehammer that belonged to Bra-zoria County.” (emphasis added).
The EEOC held
We find that Appellant has standing to bring the instant claim because of her status as a “former employee” who engaged in prior protected activity, and also because the action at issue was taken against her spouse. Moreover, with respect to the claim itself, we find that it is actionable under the Commission’s view of reprisal because the attempted arrest of a spouse by a named discriminating official is without question, an act which would “reasonably be likely to deter the charging party, or others, from engaging in protected activity.” In this regard, we note the un-rebutted testimony of Appellant’s spouse wherein he stated that he perceived [Christian’s] action to be a “scare tactic” to deter [Knight] from pursuing her discrimination complaint.... In reaching this conclusion, we find that Respondents provide no evidence to otherwise justify [Christian’s] action, with the ALJ finding that [Christian] provided no credible pertinent testimony on this matter.
The final EEOC decision, issued on 2 July 2003, awarded Knight $20,500 in compensatory damages for the retaliation claim; $18,952.50 in attorney’s fees; and $2759.73 in costs.
As noted by the majority, our standard of review is found in GERA. We can set aside the EEOC’s final order only if it was “arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law.” 42 U.S.C. § 2000e-16c(d)(l).
The majority concludes that Knight’s retaliation claim is barred by Mattern v. Eastman Kodak Company, 104 F.3d 702 (5th Cir.1997). I respectfully disagree. In Mattem this court concluded that Title VII only provides protection for “ultimate employment decisions” and that “ ‘[u]lti-mate employment decisions’ include acts ‘such as hiring, granting leave, discharging, promoting, and compensating’.” Id. at 707.
There are three reasons why I conclude that the EEOC’s decision finding retaliation, and awarding attorneys’ fees and damages, should be affirmed. First, the Fifth Circuit has determined that GERA is broader than Title VII. In 1981 this court in the case of Porter v. Adams, addressed the federal statute incorporated in GERA as it applies to federal employees and held:
The draftsmanship of § 717 is different from that of the two sections in Title VII that prohibit discrimination by private employers. Section 717 is drafted broadly. It states: “All personnel actions ... shall be made free from any discrimination based on race, color, religion, sex, or national origin.” Sections 704 and 705, 42 U.S.C. §§ 2000e-3 and 2000e-4, are more narrowly drawn. There is no general proscription against discrimination. Rather, those sections make unlawful only specific types of employment discrimination by private employers. The reasonable conclusion, *696 therefore, is that by drafting § 717 to prohibit “any discrimination”, Congress intended to bar the federal government from engaging in all those forms of discrimination identified in §§ 703 and 704, and others as well.
639 F.2d 273, 277-78 (5th Cir.1981) (emphasis added). Thus, the Fifth Circuit has ruled that the GERA language prohibiting discrimination is broader than the language in Title VII. As this court in Mat-ten pointed out “(No authority need be cited for the necessary and longstanding rule that, absent a change in the law, a decision by our court, is binding on subsequent panels.)” 104 F.3d at 707.
The second reason I conclude that Knight’s retaliation claim is not barred is because of the deference this court owes to the EEOC ■’ determination.[1] As already noted, we can set aside the EEOC’s final order only if it was “arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law.” 42 U.S.C. § 2000e-16(e)(d)(l).[2] As this court in a previous case held:
It matters not that the Department’s interpretations were adjudicative decisions, rather than purely prospective rulemaking. “Congress has long been aware of the common practice of both courts and agencies to make binding policy through ease-by-case adjudications.” Any agency’s interpretation need not occur in the context of formal rulemaking, so long as it is the considered and final policy decision of the agency.... Even the adjudicative interpretations of policy-making agencies are entitled to Chevron deference.
Microcomputer Technology Institute v. Riley, 139 F.3d 1044, 1047 (5th.1998) (citations omitted). See also EEOC v. Commercial Office Products Company, 486 U.S. 107, 115, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) (“[I]t is axiomatic that the EEOC’s interpretation of Title VII, for which it has primary enforcement responsibility, need .... only be reasonable to be entitled to deference.”).
The EEOC in this case, found as already noted, that Knight’s retaliation claim was proven, and that “the attempted arrest of a spouse by a named discriminating official is without question an act which would ‘reasonably be likely to deter the charging party, or others from engaging in protected activity.’ ” The EEOC noted that “[a]s set forth in the EEOC Compliance Manual, § 8, (Retaliation R. at 8-9) (May 1998), protection against reprisal extends to employees who are closely associated, such as spouses, where for example one spouse engages in a protected activity and the employer retaliates against the other spouse as a consequence.” It is hard to imagine a more effective act of retaliation than trying to get a spouse, the only breadwinner in the family of a terminated employee, fired.
Finally, the Supreme Court in Robinson v. Shell Oil Company, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), decided shortly after Matten was decided, limited Matten to some degree. Robinson held that a terminated employee could bring a *697 post-employment retaliation suit against the employee’s former employer for giving an unfavorable letter of reference. Id. at 339, 117 S.Ct. 843. Justice Thomas wrote for a unanimous Supreme Court:
[P]etitioner argues that the word “employees” includes former employees because to hold otherwise would effectively vitiate much of the protection afforded by § 704(a). This is also the position taken by the EEOC. According to the EEOC, exclusion of former employees from the protection of § 704(a) would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims. Those arguments carry persuasive force given them coherence and their consistency with a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms.
Id., at 345-346, 117 S.Ct. 843. (citations omitted).
As noted, Mattem held that only “ultimate employment decisions” are covered by Title VII. Consequently Mattem would exclude any postemployment protection for retaliation, since you cannot have an ultimate employment decision after employment is terminated. The holding in Robinson could hardly be more explicit-postemployment acts of retaliation are covered by Title VII, and therefore compensa-ble. Mattem is in direct conflict with Robinson as to postemployment claims. Accordingly, Mattem was modified by Robinson, certainly to the extent that postemployment retaliation claims are cognizable. Ostracism by co-workers is usually not an adverse employment action that will sustain a retaliation claim. Manatt v. Bank of America, 339 F.3d 792, 803 (9th Cir.2003); Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 969, (8th Cir.1999); Parkins v. Civil Constructors of Illinois Inc., 163 F.3d 1027, 1039 (7th Cir.1998). However, the EEOC in this case found more than just ostracism by co-workers. The EEOC found that Christian’s “frequent remarks to [Knight] that she was untrustworthy and disloyal, suggesting that her job depended on her keeping quiet about the sexual harassment claim .... ” was proof of his intent to retaliate. This was a direct threat of retaliation made by Christian to Knight. When Knight quit, rather than submit to more harassment, Christian sought to get Knight’s spouse fired. If an employer’s attempt to have a spouse of a former employee fired because the former employee exercised GERA rights, does not constitute retaliation, GERA retaliation protection is toothless. It is hard to imagine a more classic example of retaliation than attempting to get a former employee’s spouse fired. It was certainly a much more serious act of retaliation than the negative reference letter at issue in Robinson.
Based on the foregoing I would affirm the EEOC decision finding that Christian’s direct threats to Knight that her job depended on her keeping quiet about the sexual harassment, together with Christian’s attempt to have Knight’s husband terminated from his employment is sufficient basis to constitute a claim of retaliation under GERA. Accordingly, I respectfully dissent as to that portion of the majority opinion holding to the contrary.

. The majority opinion argues that the deference owed to the EEOC decision was not raised by Knight, nevertheless, the majority opinion, as does this dissent, analyzes the facts of this case under this deferential standard.