Debbie LAQUAGLIA, Plaintiff–
Appellant,

v.

RIO HOTEL & CASINO, INC.,
a Nevada Corporation,
Defendant–Appellee,

and

Hank Mancini; John Squatrito,
Defendants.

No. 98–15834.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1999.

Decided Aug. 9, 1999.

Gus W. Flangas, Demetras & Flangas, Las Vegas, Nevada, for the plaintiff-appellant.

Mark J. Ricciardi, Ricciardi & Paustian, Las Vegas, Nevada, for the defendants-appellees.

Before: FERGUSON and THOMAS, Circuit Judges, and KING,[1] District Judge.

1. Honorable Garr M. King, United States District Judge for the District of Oregon, sitting by designation.

2. N.R.S. § 233.160(1)(b) states: "A complaint which alleges unlawful discriminatory prac-

FERGUSON, Circuit Judge:

Debbie Laquaglia ("Laquaglia") was the victim of repeated sexual comments by her immediate supervisors at the Rio Hotel & Casino, Inc. ("Rio"), where she worked as a dealer and floor supervisor. After she resigned in May 1994, she filed a charge with the Nevada Equal Rights Commission ("NERC") contending that she was subject to sexual harassment in the workplace, in violation of Title VII of the Civil Rights Act of 1964. The sole issue before the district court was the timeliness of her discrimination complaint to the Equal Employment Opportunity Commission ("EEOC"). Because the district court did not have Nevada's worksharing agreement with the EEOC before it when it determined the issue on summary judgment, we remand for reconsideration of the timeliness of Laquaglia's claim.

## I. BACKGROUND

Laquaglia began working for the Rio hotel in January 1990. She alleges that after she was promoted from a dealer to a floor person, two of her immediate supervisors, Hank Mancini and John Squatrito, began making sexually inappropriate comments and unwelcome sexual advances to her. She complained to several other bosses with little result and later was fired, allegedly because of a work-related mistake. The hotel reinstated her to the same shift and, shortly thereafter, fired Squatrito. Still, Laquaglia contends that the harassment continued, forcing her to resign on May 3, 1994.

On January 19, 1995—261 days after her resignation—Laquaglia filed a charge of discrimination with the NERC on an intake form, which she signed and dated under oath. Nevada's deadline for filing employment discrimination claims with the NERC is 180 days from the last discriminatory act, and therefore her claim was time-barred under state law.[2] The NERC did not immediately forward her claim to the EEOC, however.

tices in ... employment must be filed with the Commission not later than 180 days after

Some four months later, on May 3, 1995, Laquaglia filled out a formal charging document with the NERC. The formal charging document was addressed to both the NERC and the EEOC. Laquaglia, however, did not check off a box at the bottom of the form, asking if she wanted the charge filed with the EEOC. Nonetheless, the NERC forwarded her complaint to the EEOC. The EEOC received it on May 22, 1995—384 days from her resignation from the Rio. On September 12, 1995, the EEOC dismissed Laquaglia's claim and sent her a Notice of Right to Sue letter. The notice explained that the agency dismissed her complaint for lack of evidence of a Title VII violation, not for being time-barred.

Laquaglia filed this action within 90 days of receiving the letter. The district court dismissed the Title VII claims against the individual defendants and granted summary judgment for the Rio on the timeliness issue. The only claim before us is the one against the Rio. The lower court concluded that Laquaglia should have filed her complaint with the NERC within 180 days, not 300 days, and therefore her Title VII claims against the Rio were untimely.

## II. DISCUSSION

### A. *Title VII Claims*

Discrimination claims under Title VII ordinarily must be filed with the EEOC within 180 days of the date on which the alleged discriminatory practice occurred. 42 U.S.C. § 2000e–5(e)(1). However, if the claimant first "institutes proceedings" with a state agency that enforces its own discrimination laws—a so-

called "deferral" state—then the period for filing claims with the EEOC is extended to 300 days. *Id.*; *see* 29 U.S.C. § 626(d)(2).[3] Charging parties have the benefit of the 300–day time limit for filing their federal claims even when they have missed the state's filing deadline for submitting those claims to the state deferral agency. *See EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) (holding that state time limits for filing discrimination claims do not determine the applicable federal time limit).[4] As Nevada is a deferral state and Laquaglia first instituted proceedings with its antidiscrimination agency, the district court wrongly concluded that her filing deadline was only 180 days.

The timeliness issue is much more complicated than that, however. Title VII also requires that, in a state having its own antidiscrimination agency, the state agency has a 60–day period in which it has the initial right to process the discrimination claim. 42 U.S.C. § 2000e–5(c). The charge is not deemed filed with the EEOC until the expiration of 60 days, unless the state agency has "earlier terminated" its proceedings. *Id. See also* 29 C.F.R. §§ 1601.13(a)(4)(ii)(B) and (b)(1). Practically speaking, this 60–day deferral provision means that Laquaglia must have filed her claim with the NERC within 240 days of the alleged discrimination to ensure timely filing with the EEOC, or the state agency must have terminated its proceedings before expiration of the 300–day period. Laquaglia cannot satisfy the first part of the test since her claim was filed with the NERC on the 261st day.

However, her claim still would be timely if the state agency earlier terminated its

---

the date of the occurrence of the alleged practice."

**3.** Section 2000e–5(e)(1) provides in part: "[I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ..., such charge shall be filed by or on behalf of the person aggrieved within three hundred

days after the alleged unlawful employment practice occurred...."

**4.** As the Court noted, the statute's language requiring the complainant to initiate proceedings with a state agency "with authority to grant or seek relief" refers only to the enabling legislation that establishes state agencies, not to the statute of limitations. 486 U.S. at 122–23, 108 S.Ct. 1666.

proceedings. The Supreme Court has held that a state "terminates" its proceedings if it has waived the 60–day deferral period in a cooperative agreement—known as a worksharing agreement—between the state agency and the EEOC. *Commercial Office Prods.*, 486 U.S. at 112–122, 108 S.Ct. 1666. Title VII authorizes the EEOC to enter into these worksharing agreements with state agencies. *See* 42 U.S.C. § 2000e–8(b); 29 U.S.C. § 625(b); *Commercial Office Prods.*, 486 U.S. at 112, 108 S.Ct. 1666. Precedent in this circuit, as well as in every other circuit that has considered the issue, has found waivers in these agreements to be self-executing, meaning that a charge filed with the state agency before the 300–day filing deadline expires is deemed automatically filed with the EEOC on that same day. *See Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1477–80 (9th Cir. 1989). *See also Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 312 (2d Cir.1996); *Griffin v. City of Dallas*, 26 F.3d 610, 613–14 (5th Cir.1994); *Worthington v. Union Pacific R.R.*, 948 F.2d 477, 482 (8th Cir. 1991); *Marlowe v. Bottarelli*, 938 F.2d 807, 814 (7th Cir.1991); *Trevino–Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 878–79 (3rd Cir.1990); *EEOC v. Techalloy Maryland, Inc.*, 894 F.2d 676, 678 (4th Cir. 1990); *Griffin v. Air Prods. and Chems., Inc.*, 883 F.2d 940, 943 (11th Cir.1989). Consequently, Laquaglia actually did not have to file a claim with the EEOC within 300 days; nor did the EEOC have to physically receive her claim within that time period. She constructively filed a timely claim with the EEOC on the 261st day if, in 1995, Nevada and the EEOC had a worksharing agreement that waived the 60–day deferral provision for her type of charge.

B. *Worksharing Agreement*

■ Although both parties urge us to apply the state-federal worksharing agreement for first time on appeal, we decline to exercise our discretion in this matter in order to allow the district court to apply the agreement in the first instance. On remand, the district court should consider the fiscal 1995 NERC worksharing agreement, the agreement that existed between the agencies at the time Laquaglia filed her charge. In doing so, the court should apply the following legal standards.

■ As a matter of law, Laquaglia filed her claim with the NERC on January 19, 1995. Neither party disputes that the intake questionnaire she submitted on that date satisfied the requirement of "filing a charge" for purposes of Title VII. *See* 29 C.F.R. § 1601.9 and 12(b). In addition, we previously have held that a detailed, signed intake form, such as the one Laquaglia signed under oath, may serve as a charge to initiate administrative proceedings. *See Casavantes v. California State Univ.*, 732 F.2d 1441, 1442–43 (9th Cir. 1984). Consequently, her later failure to check off the box on the formal charging document to send her claim to the EEOC is irrelevant to the timeliness issue.

Second, in the worksharing agreement, "dual-filed charges" means charges that are filed with the state agency and forwarded to the EEOC for filing. *See Shumway v. Hendricks*, No. 93–CV–485, 1994 WL 672656, at *2 (N.D.N.Y.1994) (noting a provision in the New York–EEOC agreement that explained dual-filed in this manner). Like other worksharing agreements, the one between Nevada and the EEOC provides that each agency designates the other as its agent for the purpose of receiving charges. Worksharing Agreement, § II.A, p. 2 (1995). Section III.A contains a waiver of the NERC's exclusive right to process "dual-filed" charges when those charges are to be "initially processed by the EEOC." [5] One cate-

---

5. As the EEOC interprets it, a state agency's waiver in a worksharing agreement of initial processing rights for specified categories of charges causes a charge within the waived category to be "filed" immediately with the EEOC. *See, e.g., Sofferin v. American Airlines,*

gory of charges the EEOC has initial processing responsibility over is "all Title VII charges received by the NERC 240 days or more" after the discrimination ended. Worksharing Agreement, § III.A, p. 6.

 In determining whether Laquaglia's claim was "dual-filed," it does not matter whether or not her January 19th charge actually was forwarded to the EEOC—only whether it was *intended* to be forwarded under the worksharing agreement. For purposes of the constructive filing of a charge with the EEOC, it is irrelevant whether the state agency actually followed the referral provisions in the agreement or erroneously began investigating a complaint that should have been forwarded to the EEOC. *See, e.g., Marlowe v. Bottarelli,* 938 F.2d 807, 814 (7th Cir.1991) (waiver is self-executing even where state agency erroneously proceeded to process the claim). Waiver provisions in workshare agreements should not be "contingent upon scrupulous compliance" with the referral provisions; otherwise, claimants with potentially meritorious claims might be denied relief as a result of bureaucratic mix-ups. *See Techalloy Maryland, Inc.,* 894 F.2d at 679.[6]

With that in mind, we read the worksharing agreement at issue to grant dual-filed status to all Title VII charges within the "mutual jurisdiction" of both the NERC and the EEOC. Section II.B of the agreement requires the NERC to refer all Title VII-related charges it receives to the EEOC when the agencies have "mutual jurisdiction." The worksharing agreement does not define this term. The Rio hotel

contends that the agencies did not have mutual jurisdiction because the 180–day state filing deadline eliminated the NERC's jurisdiction over claims filed past that deadline. We reject this argument for several reasons.

First, the Introduction to the worksharing agreement sets out the agencies' jurisdiction. Although entire statutes are cited, Section I.A of the Introduction describes only the agencies' overlapping *subject matter jurisdiction* to address certain types of employment discrimination. Section I.B implies that this subject matter jurisdiction is the "common jurisdiction" of the agencies.

In addition, the Rio's understanding of "jurisdiction" would be inconsistent with prior case law. The Supreme Court has held that state-imposed filing deadlines do not influence federal Title VII time limits, and that filing a timely administrative charge is not a jurisdictional prerequisite to filing suit in court. *See Commercial Office Prods.,* 486 U.S. at 123, 108 S.Ct. 1666; *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127. We also have recognized that "state time limits on filing court actions *or other similar filing deadlines* " are not jurisdictional prerequisites. *See Bowman v. Block,* 940 F.2d 1211, 1220 (9th Cir.1991) (emphasis added).

More importantly, the Rio's definition of "jurisdiction" would conflict with the application of the worksharing agreement. As noted earlier, one provision of the NERC–EEOC agreement grants the EEOC the right to pursue all Title VII claims re-

---

*Inc.,* 923 F.2d 552, 557 (7th Cir.1991); *Green,* 883 F.2d at 1479.

**6.** The district court also might decide whether the facts of the case warrant application of the doctrine of equitable tolling. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (compliance with filing period is not a jurisdictional prerequisite to filing a Title VII suit, but is subject to tolling). If the Commission failed to do what it told Laquaglia it would do, and what it was supposed to do under the agreement—namely, immediately forward her

claim to the EEOC—then Laquaglia's claim might have been sent to the EEOC within the 300–day period. *See Brown v. Crowe,* 963 F.2d 895, 899–900 (6th Cir.1992) (applying doctrine of equitable tolling where filing would have been within the 300–day limit but for agency oversight and defendant was not prejudiced). *See also* Worksharing Agreement, § III.D, p. 9 ("If it is apparent that one Agency *might* have jurisdiction when another does not, then the Charging Party will be referred to the appropriate Agency.") (emphasis added).

ceived by the Commission *240 days after* the last alleged discriminatory practice. In drafting this provision, the parties must have known that the Commission could not pursue a claim filed past the 180–day state filing deadline. This provision, therefore, conflicts with a reading of "mutual jurisdiction" that would bar federal remedies for a claimant who missed the state filing deadline. That is, if the NERC does not have jurisdiction to forward to the EEOC any Title VII complaints filed with the state agency after 180 days, then how can it also waive its "exclusive jurisdiction" to initially process claims it receives after 240 days.[7] The structure of these provisions suggests that the agencies intended the NERC to waive jurisdiction over untimely state charges filed with it. *See Marlowe,* 938 F.2d at 811–14 (where worksharing agreement was intended to effect state waiver of jurisdiction over untimely complaints under state law, plaintiff's charge was timely filed with the EEOC within 300 days, even though filing at that time was outside the state filing deadline).

■ Prohibiting *any* remedy to claimants who file discrimination complaints with an appropriate state or federal agency within the 300–day deadline is entirely at odds with the purpose of the worksharing agreement and with Title VII. These agreements are intended to eliminate duplication of effort between the agencies and to provide an efficient procedure for claimants to seek redress for their grievances. *See Green,* 883 F.2d at 1479; Worksharing Agreement, § I.B, p. 2. In enacting Title VII, Congress also intended the statute's procedural requirements to be liberally construed in order to remedy gender-based discrimination in the workplace and to preserve a claimant's federal remedies in discrimination suits. *See, e.g., Commercial Office Prods.,* 486 U.S. at 124, 108 S.Ct. 1666 ("Title VII ... is a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process."); *Griffin,* 883 F.2d at 944. A re-

strictive interpretation of "jurisdiction" would not further those goals.

## III. CONCLUSION

Because the district court did not consider the 1995 Nevada–EEOC worksharing agreement in granting summary judgment for the employer, we remand for the court to determine whether Laquaglia's claim was timely filed. On remand, the court should apply the agreement consistent with this opinion.

REVERSED and REMANDED for further proceedings.

---

7. The facts of this case also suggest that the NERC did not believe that it lacked jurisdiction to forward a claim filed with it after 180 days. The agency automatically forwarded Laquaglia's May 3, 1995 charge to the EEOC.