**EQUAL EMPLOYMENT OPPORTU-
NITY COMMISSION, Plaintiff-
counter-defendant-Appellee,**

v.

**DINUBA MEDICAL CLINIC,
Defendant-counter-claimant-
Appellant.**

No. 98–16454.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2000

Filed Aug. 24, 2000

---

David L. Llewellyn, Jr., Attorney at Law, Fair Oaks, California, for the appellant.

Paul D. Ramshaw, U.S. Equal Employment Opportunity Commission, Washington, D.C., for the appellee.

Before: LAY,[1] D.W. NELSON, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

In this Title VII action instituted by the EEOC, Dinuba Medical Clinic (the "Clinic") appeals from the district court's final judgment, entered after a jury trial, awarding compensatory and punitive damages, as well as injunctive and other equitable relief, to three former employees of the Clinic who alleged that they had been subjected to a hostile working environment and that the Clinic had unlawfully retaliated against one of them. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

The Clinic is a rural medical facility in Dinuba, California that employs approximately 40 employees. The Clinic's administrator, John Moore, is the highest ranking employee and accountable only to the Clinic's owner. Eight of the Clinic's employees, including the personnel director, are members of Moore's family. In 1996, the EEOC filed suit against the Clinic on behalf of three former employees who alleged that they had been the victims of unlawful employment practices in violation of Title VII. The three claimants—Elva Marquez, Maria Montemayor, and Eva Flores—alleged that Moore subjected them to a hostile working environment throughout 1993 and into 1994, and that the Clinic unlawfully discharged Marquez on January 5, 1994, in retaliation for a complaint of assault and battery that she lodged against Moore with local police.

Following a lengthy trial held in May of 1998, the jury found the Clinic liable and awarded $150,000 in compensatory damages to Marquez and $25,000 each, in compensatory and punitive damages, to Montemayor and Flores. Pursuant to 42 U.S.C. § 1981a, the district court reduced Marquez's award to $50,000, and entered judgment on the jury's verdict. Then, on September 11, 1998, the district court granted equitable relief to Marquez, in the form of back pay, and also issued an injunction prohibiting the Clinic from further discrimination and mandating, among other things, sexual harassment training and the adoption of specific anti-harassment policies and procedures.

The evidence presented at trial showed that, from 1993 into early 1994, Moore created a hostile working environment by verbally abusing the three claimants, by repeatedly groping his own private parts in their presence, by engaging in unwelcome and sexually-charged bodily contact with them, and by subjecting them to offensive sexual comments and jokes. The trial evidence also showed that Marquez's employment was abruptly terminated on January 5, 1994, the same day she filed a criminal complaint against Moore. The Clinic does not challenge the sufficiency of this evidence on appeal. Rather, it argues that the Title VII claims were barred by the statute of limitations, that Marquez did not suffer retaliation for a statutorily-protected reason, that the affirmative defense announced in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), shielded it from liability, and that the damage awards were excessive as a matter of law.

II

Whether the EEOC's Title VII suit was barred by the applicable statute of limitations is a question of law that we review *de novo*, but we review the district court's underlying factual determinations

---

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

for clear error. *See Bouman v. Block,* 940 F.2d 1211, 1218–19 (9th Cir.1991). We conclude that the EEOC's suit was timely filed within the statute of limitations.

 Title VII actions cannot proceed in federal court unless a charge of discrimination has first been filed with the EEOC. *See Delaware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Santa Maria v. Pacific Bell,* 202 F.3d 1170, 1176 (9th Cir.2000). Although ordinarily the administrative charge must be filed within 180 days of the alleged unlawful employment practice, the deadline is extended to 300 days if the charge is initially filed with a state agency that enforces its own anti-discrimination laws. *See* 42 U.S.C. § 2000e–5(e)(1) (1994). When a charge is initially filed with a state agency, however, it cannot be considered "filed" with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated...." *Id.* § 2000e–5(c). In other words, the state agency must be given a 60–day window in which it has the initial and exclusive right to process the charge, "free from premature federal intervention." *EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 110, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988).

 The net effect of the 60–day deferral provision on the 300–day limitations period is that a charge initially filed with a state agency will be treated as constructively filed with the EEOC upon either the expiration of 60 days or the termination of agency proceedings, whichever occurs first. *See* 42 U.S.C. § 2000e–5(c); *see also* 29 C.F.R. § 1601.13(b)(1). Constructive filing is made possible by "worksharing agreements," which designate the EEOC and the state agency each other's agents for the purpose of receiving charges. *See Laquaglia v. Rio Hotel & Casino, Inc.,* 186 F.3d 1172, 1175–76 (9th Cir.1999). In practical terms, therefore, a charge filed

2. The Clinic also alleges that the pre-Decem-

with a state agency within 240 days of the unlawful employment practice will be guaranteed timely filing with the EEOC. *See id.* at 1174. If the charge is filed with the state agency after the 240th day, however, it will be deemed timely filed with the EEOC only if state proceedings are terminated prior to the lapse of the 300th day. *See id.*

 The district court concluded that the pre-intake questionnaire Marquez submitted to the California Department of Fair Employment and Housing ("DFEH") on August 31, 1994, constituted the relevant administrative charge for Title VII purposes, a finding the Clinic does not dispute on appeal. Under applicable law, the charge was constructively filed with the EEOC on October 19, 1994, when the DFEH agreed to waive its exclusive 60–day jurisdiction and relinquished processing responsibility to the EEOC. This constructive filing occurred 287 days after the date of the last discriminatory act; thus, it was timely filed.

[8, 9] Contrary to the Clinic's assertions, the fact that the physical charge document was received at a later date by the EEOC is of no moment because the constructive filing date is the relevant one. *See Laquaglia,* 186 F.3d at 1175; *Green v. Los Angeles County Superintendent of Sch.,* 883 F.2d 1472, 1476 (9th Cir.1989). For the same reason, any delay in notifying the Clinic of the waiver is irrelevant.

 The Clinic also claims the DFEH waiver was legally ineffective because the worksharing agreement limits DFEH waiver authority. However, this contention is belied by the plain language of the worksharing agreement which expressly allows DFEH to waive jurisdiction for any reason.

For these reasons, the district court correctly concluded that the filing of the EEOC's Title VII action occurred within the applicable statute of limitations.[2]

ber 23rd events were discrete events, each

## III

The district court also properly concluded that Marquez's filing of the criminal complaint against Moore for assault and battery qualified as an "opposition" activity protected by § 704(a) of Title VII. We review *de novo* the district court's conclusion as to whether the EEOC stated a prima facie claim of unlawful retaliation in violation Title VII, but we will not disturb its underlying factual findings unless they are clearly erroneous. *See Tiano v. Dillard Dep't Stores, Inc.,* 139 F.3d 679, 681 (9th Cir.1998).

In relevant part, § 704(a) provides that:

[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter[.]

42 U.S.C. § 2000e–3(a). Among other things, § 704(a) prohibits employers from retaliating against employees who "oppose" discriminatory employment practices. To establish a prima facie case of retaliation, an aggrieved employee must show that "(1) he has engaged in statutorily protected expression; (2) he has suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action." *EEOC v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1012 (9th Cir.1983).

Here, the Clinic contests only the district court's conclusion that Marquez's filing of her criminal complaint against Moore constituted "statutorily protected expression." It claims that physical assault is not the same as sexual assault. Therefore, the Clinic reasons, the criminal complaint bore no relation to the previous pattern of sexual harassment.

The district court specifically found to the contrary, explaining that the physical

assault was the culmination of discriminatory acts, and that Marquez reasonably believed she was subjected to battery because of her gender. Because this finding cannot be regarded as clearly erroneous, we affirm the district court's conclusion that the filing of Marquez's criminal complaint was an activity protected by Title VII's "opposition" clause. *See United States v. Doe,* 155 F.3d 1070, 1074 (9th Cir.1998) (en banc).

## IV

For the first time on appeal, the Clinic contends that it is insulated against Title VII liability in light of *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), announced by the Supreme Court after the conclusion of trial. We may consider this new issue because it arose while the appeal was pending due to a change in law. *See Duggan v. Hobbs,* 99 F.3d 307, 313 (9th Cir. 1996). However, *Faragher* is of no assistance to the Clinic because it would have been unable to establish the necessary elements of the defense as a matter of law, even assuming it could have presented the defense at trial.

In *Faragher,* 524 U.S. at 807–08, 118 S.Ct. 2275, the Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Accord Burlington Indus. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (stating same). Under the *Faragher* rule, "if the harassment is actionable and the harasser has supervisory authority over the victim, we presume that the employer is vicariously liable for the harassment." *Burrell v. Star Nursery, Inc.,* 170 F.3d 951, 956 (9th Cir.1999). The presumption of vicarious liability "may

giving rise to a Title VII action and not part of a continuing violation. However, this argument was not presented to the trial court and

we decline to consider it for the first time on appeal. *See Dodd v. Hood River County,* 59 F.3d 852, 863 (9th Cir.1995).

be overcome only if the alleged harassment has not culminated in a tangible employment action, and then only if the employer can prove both elements of the affirmative defense" enunciated in *Faragher. Id.*

■ The *Faragher* affirmative defense requires proof of two elements by a preponderance of the evidence: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." 524 U.S. at 807, 118 S.Ct. 2275. The existence of an "anti-harassment policy with complaint procedure" is relevant evidence under the first element of the defense. *Id.* Furthermore, "an unreasonable failure to use any complaint procedure provided by the employer ... will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.* at 807–08, 118 S.Ct. 2275.

■ The Clinic contends that *Faragher* requires a reversal, or at least a remand, because it had a sexual harassment complaint procedure in place that the claimants unreasonably failed to utilize. Specifically, it argues that it is entitled to the *Faragher* defense because the claimants failed to complain *in writing* as required by the Clinic's "Policy and Procedure Manual." Notably, however, the Clinic does not dispute that there was ample evidence presented at trial, which the jury was entitled to credit, that the claimants had registered several *oral* complaints about Moore's offensive behavior to their respective supervisors. As the undisputed record reveals, the claimants complied with the Clinic's complaint procedure. There is simply no requirement in the manual that complaints be in writing. Indeed, the uncontroverted evidence was that the claimants followed the employer's grievance procedure to the letter. Thus, the *Far-*

*agher* affirmative defense was not available to the Clinic under the undisputed facts.

## V

The Clinic contends that the damages awarded in this case should either be vacated because the EEOC did not file its suit as a class action, or reduced to no more than $50,000 for the entire suit because only the EEOC qualifies as the "complaining party" under 42 U.S.C. § 1981a. We affirm the district court's award of damages in all respects.

## A

■ Section 706 of Title VII authorizes the EEOC to bring a civil action against a private employer reasonably believed to be engaged in unlawful employment practices. *See* 42 U.S.C. § 2000e–5(a)–(f). Although, prior to 1991, the EEOC could only seek equitable relief through a § 706 enforcement action, *see Yamaguchi v. United States Dep't of the Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997), it is now empowered to seek compensatory and punitive damages in addition to equitable relief. *See* 42 U.S.C. § 1981a(a)-(d) (1994). Thus, it is clear that the EEOC has the authority to seek monetary relief on behalf of individual employees when it sues in its representative capacity.

The issue of whether the EEOC may file a representative action which is not a class action has not been expressly addressed. However, two decades ago in a virtually identical context, the Supreme Court held that "Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices." *General Tel. Co. v. EEOC,* 446 U.S. 318, 323, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). In *General Telephone Company,* the EEOC brought suit under § 706 of Title VII on behalf of four employees, seeking injunctive relief and the equitable remedy of backpay for the aggrieved employees, but the EEOC was

not certified as a class representative pursuant to Rule 23. *Id.* at 320, 100 S.Ct. 1698. Relying on the text of § 706 and its legislative history, the Court concluded that the EEOC's "authority to bring [its] actions [under § 706] is in no way dependent upon Rule 23, and the Rule has no application to a § 706 suit." *Id.* at 324, 100 S.Ct. 1698.

In sum, *General Telephone Company* held that the EEOC may seek class-wide relief without being certified as a class representative under Rule 23. *Id.* at 320, 100 S.Ct. 1698. Because the Court reached this conclusion without any qualifications based on the type of relief sought, there is no principled reason to depart from *General Telephone Company* and require class certification under Rule 23 simply because the EEOC is now authorized to sue for damages in addition to equitable relief.

### B

We also reject the Clinic's argument that 42 U.S.C. § 1981a limits recovery in this case to no more than $50,000 for the entire action. Section 1981a(a)(1) provides that *"[i]n an action brought by a complaining party* under section 706 [of Title VII] ..., *the complaining party* may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of [Title VII]." 42 U.S.C. § 1981a(a)(1) (emphasis added). Section 1981a(b), in turn, limits the amount of damages that each "complaining party" may recover based on the number of the defendant's employees. *Id.* § 1981a(b)(3). Where the defendant has no more than 100 employees, as in this case, § 1981a(b) limits the total amount of recoverable damages to $50,000 "for each complaining party." *Id.* § 1981a(b)(3)(A).

The term "complaining party" is defined in § 1981a(d):

The term "complaining party" means—

(A) in the case of a person seeking to bring an action under subsection (a)(1) of this section, the Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an action or proceeding under title VII of the Civil Rights Act of 1964[.]

*Id.* § 1981a(d)(1)(A). Neither party disputes that the EEOC is a "complaining party" since it is the "person seeking to bring an action" under § 1981a(a)(1). The Clinic argues, however, that § 1981a(a)(1) permits recovery of damages *only* for the "complaining party" that *actually* institutes the lawsuit, i.e., the named plaintiff, not for individuals that *could have* brought the lawsuit on their own but did not. The EEOC, on the other hand, contends that the $50,000 cap applies to each individual employee aggrieved by an unlawful employment practice, even if the EEOC is the only named plaintiff.

Because this issue involves an administrative agency's construction of a statute that it administers, our analysis is governed by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), as recently explained in *Food and Drug Administration v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Under *Chevron,* we must consider first "whether Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778. "If Congress has done so, the inquiry is at an end; the court 'must give effect to the unambiguously expressed intent of Congress.'" *Brown & Williamson,* 120 S.Ct. at 1300 (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778). However, "if Congress has not specifically addressed the question, a reviewing court must respect the agency's construction of the statute so long as it is permissible." *Id.*

Because § 1981a is ambiguous on the question of whether the EEOC, as the sole named plaintiff in a Title VII action, can recover up to the statutory limit for each

aggrieved employee, *Chevron* requires us to defer to the EEOC's interpretation of § 1981a, so long as it is reasonable. The EEOC has taken the following position with respect to the scope of the damage caps under § 1981a:

> When the Commission, or an individual, is pursuing a claim on behalf of more than one person, *the damage caps are to be applied to each aggrieved individual.*
>
> * * *
>
> Section 1981a(b)(3) provides that the amount of damages "shall not exceed [the caps] for each complaining party." Complaining party is defined as "the Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an action under [Title VII, the ADA or the Rehabilitation Act]." Section 1981a(d) (emphasis added). *Since each individual who states a claim under one of these statutes is one who may bring an action, each is eligible for damages up to the cap. This is true even when their claims are joined either in Commission or private litigation brought on behalf of several individuals,* or a class action brought by a private party.
>
> As a policy matter, any other construction would conflict with Congressional intent to make damages available to fully compensate persons harmed by discrimination and to deter further discrimination.

EEOC Enforcement Guidance: *Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991,* pp. 3, 14 (effective July 14, 1992) (emphasis added).

The EEOC's interpretation is eminently reasonable and, therefore, deserves our deference. First, as the EEOC correctly observed, "a contrary interpretation would be . . . unwieldy, if not unworkable" because if "the Commission cannot seek damages on behalf of each aggrieved person in a single action, it would have to file numerous individual suits or recommend that each individual intervene in Commission actions." *Id.,* p. 14. Second, legislative history supports the EEOC's construction. *See* 137 Cong. Rec. S15471 (daily ed. October 30, 1991) (statement of Sen. Kennedy) ("The amount of damages that a victim can recover should not depend on whether that victim files her own lawsuit or joins with other similarly situated victims in a single case. Rather the amount of damages should depend on the injury the victim has suffered, subject to the caps."). And finally, the courts that have squarely faced this issue have agreed with the EEOC's interpretation.[3] *See EEOC v. W & O, Inc.,* 213 F.3d 600, 613–14 (11th Cir.2000); *EEOC v. Moser Foods, Inc.,* No. Civ 94–2516 PHX EHC, 1997 WL 827398, at *3–5 (D.Ariz.1997); *Adams v. Pinole Point Steel Co.,* Nos. C 92–1962 MHP, C 93–3708 MHP, 1995 WL 73088, at *6–7 (N.D.Cal.1995). Thus, we hold that each aggrieved employee represented by the EEOC in a Title VII action may receive up to the statutory cap without filing a separate suit or intervening in the EEOC's action. As such, we affirm the district court's award of damages to each individual claimant in this case.

## VI

In sum, we hold that the EEOC's Title VII suit was not time-barred, that the EEOC sustained its burden of proving unlawful retaliation, that a *Faragher* affirmative defense did not shield the Clinic against liability, and that the damage awards were proper as a matter of law.

---

**3.** The three cases cited by the Clinic are not to the contrary. In all those decisions, there was *one* "complaining party" who sued on multiple Title VII claims and sought to recover up to the statutory cap for *each* claim. *See Hudson v. Reno,* 130 F.3d 1193, 1199–1201 (6th Cir.1997); *Smith v. Chicago Sch. Reform Bd. of Trustees,* 165 F.3d 1142, 1150 (7th Cir.1999); *Baty v. Willamette Indus.,* 172 F.3d 1232, 1245–46 (10th Cir.1999). Thus, those cases are inapposite and cast no doubt on the reasonableness of the EEOC's interpretation.

Accordingly, we affirm the judgment of the district court.

AFFIRMED