ROGERS, Circuit Judge,
dissenting:
Today the court holds that whenever a complainant fails to update his address with the Equal Employment Opportunity Commission (“EEOC”) and therefore fails to receive a mailed right-to-sue notice, the complainant is not entitled to equitable tolling regardless of what other measures the complainant took to ensure receipt of the notice. This is not the law. A complainant, like Matthew Maggio, is entitled to equitable tolling if the record “shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.” Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (citation and internal quotation marks omitted); see Dyson v. District of Columbia, 710 F.3d 415, 421 (D.C.Cir.2013). Here, the record shows that during a time of personal upheaval, when his permanent mailing address was uncertain, Maggio took reasonable steps to direct the EEOC to send his right-to-sue notice to his attorney. The EEOC failed to follow his instructions. Neither this court’s precedent nor that cited by the court today require more. Because Maggio exercised reasonable diligence and circumstances beyond his control prevented his timely filing of his complaint, he is entitled to receive the benefit of equitable tolling, see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); Gordon v. Nat'l Youth Work Alliance, 675 F.2d 356, 360 (D.C.Cir.1982), and, accordingly, I respectfully dissent.
I.
Title VII encourages the informal resolution of employment discrimination disputes by requiring complainants to file charges first with the EEOC or the appro *62 priate state or local agency before proceeding to federal court. 42 U.S.C. §§ 2000e-5(e)(1), (f)(1); see Occidental Life Ins. Co. of Cal. v. EEOC, 432 U.S. 355, 368, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); Martini v. Fed. Nat’l Mortg. Ass’n, 178 F.3d 1336, 1340, 1346-47 (D.C.Cir.1999). The EEOC coordinates with state and local agencies, like the D.C. Office of Human Rights (“OHR”), to streamline the processing and investigation of charges. See 42 U.S.C. § 2000e-8(b); 29 C.F.R. §§ 1601.13(c), 1626.10; Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1372-74 (D.C.Cir.2008). Pursuant to the worksharing agreement between the EEOC and the OHR, they “each designate the other as its agent for the purpose of receiving and drafting charges.” Pl.’s Opp’n Def.’s Mot. Dismiss, Ex. 2, Worksharing Agreement ¶ IIA. Charges received by the OHR are “deemed received” by the EEOC. See 29 C.F.R. § 1626.10(c); cf. Schuler, 514 F.3d at 1372.
Because Maggio is appealing the dismissal of count I of his amended complaint for lack of timeliness pursuant to Federal Rule of Civil Procedure 12(b)(6), this court must “accept all factual allegations in the complaint as true” and “consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.” Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); see, e.g., Gordon v. U.S. Capitol Police, 778 F.3d 158, 163-64 (D.C.Cir.2015). The court may also consider documents that are undisputed by the parties. See Bowden v. United States, 106 F.3d 433, 437 (D.C.Cir.1997); Hollis v. U.S. Dep’t of the Army, 856 F.2d 1541, 1544 (D.C.Cir.1988).
Notwithstanding the worksharing agreement, the record shows that information received by the OHR is not necessarily passed on to the EEOC. Maggio submitted an intake questionnaire to the' OHR on April 8, 2012, on which he noted that he was represented by an attorney. A copy of this questionnaire, which both parties attached to their motions in the district court, shows that Maggio supplied his attorney’s name, address, and telephone number. Maggio listed his own address as “3032 Rodman Street, NW, Apt. 24, Washington D.C. 20008.” Maggio and his attorney, A.J. Dhali, both attended the intake meeting with the OHR on May 11, 2012, where Maggio filled out EEOC Form 5, the form used to cross-file a charge with the OHR and the EEOC. EEOC Form 5, unlike the OHR’s intake questionnaire, does not provide space for a complainant to indicate representation by an attorney. Maggio, however, indicated such representation in the box for his name. There, Maggio wrote his own name and immediately below, within the same box, “c/o A.J. Dhali, Esq, 1629 K Street, NW, Suite 300, Washington, DC 20006.” In the box for “Home Phone,” Maggio put his attorney’s email address, “ajdhali@dhalilaw.com,” and his attorney’s telephone number. Maggio put his Rodman Street address in the box for “Street Address.”
Although listing his Rodman Street address on the OHR intake questionnaire and EEOC Form 5, on or about April 1, 2012, Maggio temporarily had gone to South Carolina to care for his mother, who was in the final stages of Alzheimer’s Disease. In opposing the motion to dismiss his complaint, Maggio explained that at that time he was “between residences” and “continued to receive mail at the D.C. address, and also continued to apply for jobs within the District,” having not yet decided to relocate permanently to South Carolina. *63 Pl.’s Opp’n Def.’s Mot. Dismiss 11. Although his move became permanent around September 2012 and he did not update his address with the EEOC, Dhali remained his attorney and Dhali’s address remained accurate.
Notwithstanding the “e/o” and Maggio’s attorney’s name, title, and full address on EEOC Form 5, on November 26, 2012, the EEOC mailed a right-to-sue notice only to Maggio’s Rodman Street address. Maggio did not receive this notice, and the EEOC did not mail the notice to his attorney. When his attorney contacted the EEOC by telephone and fax on June 4, 2013, and again by telephone ten days later, the 90-day statute of limitations to file suit had expired, see 42 U.S.C. § 2000e-5(f)(1). On 'June 17, 2013, the EEOC’s D.C. field office emailed Dhali requesting a letter of representation; Dhali emailed the letter the same day, and the EEOC then emailed the right-to-sue notice to Dhali. Maggio, through Dhali, filed suit on June 21, 2013.
II.
The Supreme Court and this court have repeatedly recognized that “Congress expected that the administrative stage of the Title VII process would be conducted by laymen — not lawyers,” Bethel v. Jefferson, 589 F.2d 631, 643 (D.C.Cir.1978); see EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 124, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988); Howard v. Pritzker, 775 F.3d 430, 443 (D.C.Cir.2015); Rozen v. District of Columbia, 702 F.2d 1202, 1203-04 (D.C.Cir.1983). Consequently, agencies must take care not to “extinguish rights ... simply by creating procedural labyrinths,” Bethel, 589 F.2d at 643; see Love v. Pullman Co., 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); Coles v. Penny, 531 F.2d 609, 614-15 (D.C.Cir.1976). That Maggio was represented by an attorney does not afford the court leave to abandon him to “a web of procedural traps,” Bethel, 589 F.2d at 640 (citation and internal, quotation marks omitted); “[t]he fact that the particular complainant might have had an attorney at one stage of the process is of no relevance, for [Title VII] must be given a construction rendering its mechanisms workable in the hands of laymen generally,” id. at 642 n. 67; see Schuler, 514 F.3d at 1376; see also Commercial Office Prods. Co., 486 U.S. at 124, 108 S.Ct. 1666; Bethel, 589 F.2d at 641 n. 61.
This circuit is not alone in recognizing the EEOC’s responsibility to guide complainants through the administrative process. To that end, our sister circuits and other courts have avoided penalizing plaintiffs who failed to notify the EEOC of changes in address when they reasonably relied on the EEOC to send correspondence to their attorneys. As the Fourth Circuit acknowledged in Coleman v. Talbot County Detention Center, 242 Fed.Appx. 72, 74 (4th Cir.2007), “it is not at all unreasonable for a layperson who has retained counsel to assume that all further matters will be handled by her attorney.” Although the plaintiff had failed to apprise the EEOC of her change of address, the Fourth Circuit nevertheless concluded that “the primary fault is that of the EEOC for not — as both counsel and Coleman reasonably expected — sending a copy of the right-to-sue letter to counsel.” Id.; see also Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 525 (11th Cir.1991); Pole v. Citibank, N.A., 556 F.Supp. 822, 823 (S.D.N.Y.1983). Having taken the “reasonable step[ ]” of instructing the EEOC to contact him in care of Dhali, see St. Louis v. Alverno Coll., 744 F.2d 1314, 1317 (7th Cir.1984), and failing to receive his right-to-sue notice through “ ‘fortuitous circumstances’ or ‘events beyond his control,’ ” i.e., the EEOC’s disregard of his *64 written instruction, see Lewis v. Conners Steel Co., 673 F.2d 1240, 1243 (11th Cir.1982) (citation omitted), Maggio is entitled to equitable tolling.
A.
Maggio reasonably expected the EEOC to send correspondence regarding his case to his attorney, Dhali, because he directed the EEOC to do so on the charge form, EEOC Form 5. The court’s conclusion that Maggio is not entitled to equitable tolling hinges on the fact that Maggio supplied an incorrect address for himself on EEOC Form 5. Op. at 60-61. But Maggio may prove his diligence by showing that he “had notified the EEOC that he had moved or had taken reasonable steps to ensure that he would receive mail delivered” to his previous residence. See St. Louis, 744 F.2d at 1317 (emphasis added) (citing Pole, 556 F.Supp. at 823); see also Lewis, 673 F.2d at 1243. Maggio included his attorney’s name, title (“Esq”), and address on EEOC Form 5 after the designation “c/o,” as well as an email address that obviously belonged to Dhali (“ajdhali@ dhalilaw.com”) and Dhali’s telephone number. Use of the phrase “c/o,” which means “care of,” is commonly used to designate mail that should be sent to a person through a third party, see Webster’s Third New International Dictionary 338 (1993), and was thus sufficient to alert the EEOC that mail on this matter was to be sent to Maggio through Dhali. Furthermore, the information that Maggio provided on EEOC Form 5 made clear that Dhali was an attorney: Black’s Law Dictionary defines “Esq.,” or “esquire,” as “[a] candidate for knighthood,” “[a] member of the gentry whose rank was inferior to that of a knight,” “[a] landed gentleman,” and “[a] title of courtesy commonly appended after the name of a lawyer.” Black’s Law Dictionary 663 (10th ed.2014). Lest there be some doubt that Maggio was not referring to Dhali in his capacity as landed gentry, Dhali’s email domain is listed on EEOC Form 5 as “dhalilaw.com.” The fact that Maggio supplied an email address that belonged to Dhali, not himself, should have further alerted the EEOC that Maggio expected the agency to communicate with Dhali.
The court dismisses Maggio’s attempts to alert the EEOC and the OHR to his representation by an attorney for the reason that Maggio never explicitly directed either agency to communicate with his attorney. Op. at 60 n. 4, 61 n. 5; see also Maggio v. Wis. Ave. Psychiatric Ctr., Inc., 987 F.Supp.2d 38, 42 (D.D.C.2013). Not so. The meaning of “c/o” is “not ambiguous.” Cf. In re NETtel Corp., Inc., 364 B.R. 433, 461 (Bankr.D.D.C.2006) (citation apd internal quotation marks omitted). Nor, in the present context, is the title “Esq.,” and it was not unreasonable for Maggio to expect correspondence would be sent to Dhali after the EEOC was apprised of Maggio’s representation. Significantly, the EEOC’s compliance manual directs its employees to send a right-to-sue notice to both the charging party and his attorney. 1 EEO Compliance Manual § 6.5(b). No other meaning, and the court suggests none, could reasonably have been ascribed by the EEOC to the information on Maggio’s EEOC Form 5 other than that Dhali was Maggio’s attorney and correspondence regarding Maggio’s case should be directed to his attorney. The cases on which the court relies for the suggestion that the EEOC is not required to send a right-to-sue notice to a complainant’s attorney, see Op. at 61 n. 5, are inapposite. In each, the complainant or the complainant’s attorney had received actual notice that the right-to-sue letter had been sent, and suit still was not timely filed. See Threadgill v. Moore U.S.A., Inc., 269 F.3d 848, 850-51 (7th Cir.2001); *65 Hopkins v. United Parcel Serv., 221 F.3d 1334, at *4-5 (6th Cir.2000) (unpublished); Ball v. Abbott Adver., Inc., 864 F.2d 419, 421 (6th Cir.1988).
Furthermore, if Maggio’s EEOC Form 5 was ambiguous, the fault lies with the EEOC, not Maggio. Maggio not only-alerted the OHR on its intake questionnaire that Dhali was his attorney, he also included information on EEOC Form 5 itself that was sufficient to alert the EEOC that he was represented by an attorney and, in any event, that correspondence should be directed to Dhali. The OHR, it turns out, does not automatically share its intake questionnaires with the EEOC, and unlike the OHR intake questionnaire, EEOC Form 5 does not contain a space for a claimant to indicate representation by an attorney. Although Maggio faded to update his own address, there is no equity in dismissing Maggio’s complaint as untimely when he took reasonable steps to ensure that his attorney would receive notice from the EEOC and' any confusion easily could have been avoided if EEOC Form 5 included space for complainants to indicate representation by an attorney and to instruct the EEOC to direct correspondence to the attorney. The court holds Maggio to the EEOC Form 5 reference to the requirement to update his address, see Op. 59, 60, but not the EEOC to what was clear on the face of its own form.
B.
A further consideration weighing in Maggio’s favor that the court ignores altogether is the agency relationship established by the worksharing agreement. Maggio contends that knowledge of his representation by an attorney should be imputed to the EEOC through the EEOC’s agency relationship with the OHR. The worksharing agreement between the OHR and the EEOC provides that they are each other’s agents “for the purpose of receiving and drafting charges.” Worksharing Agreement ¶ II.A. “An agent has actual authority to take ... acts necessary or incidental to achieving the principal’s objectives.” Restatement (Third) of Agency § 2.02 (2006). “[I]t is natural to assume that the principal wishes, as an incidental matter, that the agent take the steps necessary and that the agent proceed in the usual and ordinary way” to accomplish the principal’s objectives. Id. cmt.d. Furthermore, “notice of a fact that an agent knows ... is imputed to the principal if knowledge of the fact is material to the agent’s duties to the principal.” Id. § 5.03; see In re Color Tile Inc., 475 F.3d 508, 513 (3d Cir.2007); Martin Marietta Corp. v. Gould, Inc., 70 F.3d 768, 773 & n. 4 (4th Cir.1995); Bowen v. Mount Vernon Sav. Bank, 105 F.2d 796, 798-99 (D.C.Cir.1939).
The defendant, Maggio’s former employer, urges a narrow reading of the works-haring agreement, maintaining that the OHR is not the EEOC’s agent for the purpose of receiving instructions about communicating with a complainant’s attorney, even though Maggio provided his attorney’s name and contact information on the OHR intake questionnaire he filed to initiate the process of filing a charge. Such a reading is at odds with our precedent, which recognizes that “[tjhese works-haring agreements are meant to ease charges through the remedial system, not to erect hurdles claimants must decipher and overcome,” Schuler, 514 F.3d at 1374. Thus, “[t]he DC OHR’s and EEOC’s procedural requirements are to be read broadly and flexibly in the employee’s favor in light of their remedial purposes and because they are designed for laypersons.” Esteños v. PAHO/WHO Fed. Credit Union, 952 A.2d 878, 885-86 (D.C.2008). “These agreements are intended to elimi *66 nate duplication of effort between the agencies and to provide an efficient procedure for claimants to seek redress for their grievances.” Laquaglia v. Rio Hotel & Casino, Inc., 186 F.3d 1172, 1177 (9th Cir.1999); accord Nichols v. Muskingum Coll., 318 F.3d 674, 679 (6th Cir.2003). A “restrictive interpretation” of the acts constituting receiving and drafting charges “would not further these goals.” See Laquaglia, 186 F.3d at 1177.
The worksharing agreement’s agency provision is designed to help complainants easily initiate Title VII’s administrative process- — i.e., file a charge — without having to worry about approaching the correct office. See Esteños, 952 A.2d at 886. Collecting information about the complainant’s representation by an attorney is a normal part of the intake process — notably, both the OHR and the EEOC’s intake questionnaires ask for information about representation by an attorney, see Pl.’s Opp’n Def.’s Mot. Dismiss, Ex. 6, OHR Employment Intake Questionnaire; EEOC, Intake Questionnaire 4 (2009), http://www.eeoc. gov/form/upload/Uniform-Intake-Questionnaire.pdf (last visited July 10, 2015). Collecting this information is thus the usual way for an agency to “receive” information relevant to a charge and is “material to the [OHR’s] duties to the [EEOC].” See Restatement (Third) of Agency § 5.03; see also id. § 5.02(1). Maggio’s notification to the OHR that he was represented by an attorney .therefore put the EEOC on notice as to same. Id. §§ 5.02-5.03; see Martin Marietta Corp., 70 F.3d at 773. Requiring complainants to separately inform the OHR and the EEOC that they are represented by an attorney, where neither intake questionnaire so requires, is precisely the kind of bureaucratic technicality resulting in duplication of effort that Title VII and the worksharing agreements were designed to avoid. See Love, 404 U.S. at 527, 92 S.Ct. 616; Laquaglia, 186 F.3d at 1177.
C.
The court’s suggestion otherwise notwithstanding, the conclusion that Maggio is entitled to the benefit of equitable tolling is consistent with our precedent. In Dyson, 710 F.3d at 421-22, see Op. at 60-61, the court held that the plaintiff was not entitled to equitable tolling of the statute of limitations for filing an administrative charge when she waited until the very end of the limitations period to file an intake questionnaire with the EEOC and disregarded specific instructions to follow up with the EEOC until after the limitations period had expired., Maggio exhibited no such dilatory behavior. Contrary to the court’s suggestion, Op. at 58-59, Maggio ,did not act unreasonably in waiting 13 months to contact the EEOC about his right-to-sue notice. The Supreme Court has held that
[i]f a complainant is dissatisfied with the progress the EEOC is making on his or her charge ... he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court. The 180-day limitation provides only that this private right of action does not arise until 180 days after a charge has been filed.... After waiting for that period, the complainant may either file a private action within 90 days after EEOC notification or continue to leave the ultimate resolution of his charge to the efforts of the EEOC.
Occidental Life Ins., 432 U.S. at 361, 97 S.Ct. 2447 (emphases added). The EEOC’s regulations allow a complainant to receive a right-to-sue notice upon request “at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission.” 29 C.F.R. § 1601.28(a)(1) (emphasis add *67 ed); see Martini, 178 F.3d at 1345. Case law confirms that the EEOC regularly takes much longer than 180 days, or even more than a year, to resolve charges. See, e.g., Robinson v. Ergo Solutions, LLC, 85 F.Supp.3d 275, 283-84, No. 14-379(JDB), 2015 WL 1422138, at *6 (D.D.C. Mar. 30, 2015) (two years, four months: charge filed in August 2011, right-to-sue notice issued in December 2013); Olatunji v. District of Columbia, 958 F.Supp.2d 27, 29 (D.D.C.2013) (one year, four months: charge filed in February 2009, right-to-sue notice issued in June 2010); Thomas v. Wash. Metro. Area Transit Auth., 907 F.Supp.2d 144, 147 (D.D.C.2012) (one year, three months: charge filed in May 2010, right-to-sue notice issued in August 2011).
As this court has recognized; “Congress well understood that the EEOC’s limited resources preclude it from investigating every charge within 180 days but nevertheless ‘hoped that recourse to the private lawsuit will be the exception and not the rule.’ ” Martini, 178 F.3d at 1346 (citation omitted) (quoting 118 Cong. Rec. 7168 (1972)); see also Occidental Life Ins., 432 U.S. at 362-66, 97 S.Ct. 2447. To that end, courts have rejected the application of state statutes of limitations and the doctrine of laches to Title VII complaints filed in federal court after lengthy administrative proceedings. See Kannikal v. Attorney Gen. U.S., 776 F.3d 146, 150 (3d Cir.2015); Howard, 775 F.3d at 441-42. Congress’s intent that Title VII claims be resolved through the administrative process “whenever possible,” Occidental Life Ins., 432 U.S. at 368, 97 S.Ct. 2447, would likewise be frustrated by requiring complainants to request a right-to-sue notice at the earliest possible opportunity or risk losing the benefit of equitable tolling down the road. And given the wide variance in the amount of time the EEOC requires to resolve claims, Maggio’s decision (through his attorney) not to contact the EEOC until June 2013 does not, under the circumstances, show a lack of diligence.
The court purports to be following the rule of our sister circuits, see Op. at 60-61 & n. 5, but those courts have not held that a complainant’s failure to update his address with the EEOC is an absolute bar to equitable tolling when he has made other appropriate arrangements to receive mail. See Coleman, 242 Fed.Appx. at 74; Stallworth, 936 F.2d at 525; cf. St. Louis, 744 F.2d at 1317. In Day v. Lincoln Ins. Agency, 1 Fed.Appx. 521, 523 (7th Cir.2001), the Seventh Circuit held that the plaintiff was not entitled to equitable tolling when he did not apprise the EEOC of his new address after his order to the post office to forward his mail had expired, but the court acknowledged that the plaintiffs instruction to the post office “at least arguably] ... created the equivalent of an accurate address for him, as long as that instruction was in effect.” Similarly to Day, the other cases cited by the court involve complainants who both moved without alerting the EEOC to their new addresses and without making appropriate arrangements to receive mail sent to their old addresses: Abraham v. Woods Hole Oceanographic Institute, 553 F.3d 114, 120 (1st Cir.2009); Pearison v. Pinkerton’s Inc., 90 Fed.Appx. 811, 813 (6th Cir.2004); Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 385 (9th Cir.1997); Hunter v. Stephenson Roofing, Inc., 790 F.2d 472, 475 (6th Cir.1986); St. Louis, 744 F.2d at 1317. Or the cases involve complainants who received actual notice of their right to sue in time to file within the statute of limitations and failed to do so: Threadgill, 269 F.3d at 850-51; Hopkins, 221 F.3d 1334, at *4-5; Nelmida, 112 F.3d at 385; Hill v. John Chezik Imports, 869 F.2d 1122, 1124 (8th Cir.1989); Ball, 864 F.2d at 421; Hunter, 790 F.2d at 473. Maggio’s efforts to have the EEOC send correspondence to him in *68 care of his attorney, Dhali, and his diligent pursuit of his rights once he received actual notice distinguish his case from those relied on by the court.
Accordingly, because Maggio exercised reasonable diligence in alerting the EEOC that it should send correspondence to his attorney, and through no fault of his own the EEOC did not do so, he is entitled to equitable tolling of the 90-day statute of limitations to file suit, and I respectfully dissent.